**John FERGUSON, Jr., et al.**

v.

**George H. EAKLE et al.**

**Appeal of John KITTREDGE and Lois Kittredge.**

**No. 73–1649.**

United States Court of Appeals, Third Circuit.

Argued Dec. 17, 1973.

Decided Feb. 15, 1974.

Patrick W. Kittredge, Harold Greenberg, Thomas M. Kittredge, Philadelphia, Pa., Charles W. Heuisler, Camden, N. J., for appellants; Cohen, Shapiro, Polisher, Shiekman and Cohen, Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

Gerard C. Gross, McGahn and Friss, Atlantic City, N. J., for appellees.

Before VAN DUSEN, ALDISERT and ROSENN, Circuit Judges.

### OPINION OF THE COURT

ALDISERT, Circuit Judge.

The sole question remaining in this appeal is whether the district court abused its discretion in granting a voluntary dismissal of plaintiff-appellees' complaint in equity. After both the complaint and defendant-appellants' counterclaim were dismissed, the defendant lodged this appeal. Plaintiff-appellee has now conceded that it was error to dismiss the counterclaim.

The record discloses that the plaintiff John Ferguson had represented the defendant Kittredges as a real estate agent in the purchase of a summer home in Avalon. Later, when they decided to sell the property, they listed it with Ferguson who found a buyer for them. At this time, evidencing a desire to purchase a bay front property, they asked Ferguson to find this type of property for them. Subsequently, Ferguson, Jef-

frey Potter, one of his business associates, and their respective wives signed an agreement to purchase the bay front property of defendant George Eakle. Before the April 15, 1972 settlement date of this agreement, the Kittredges, without consulting Ferguson, purchased the Eakle property, which property had been listed with a broker named Cleveland Thomas.

The proceedings began as an equity action on April 19, 1972, in the Superior Court of New Jersey, Chancery Division, Cape May County, in which the plaintiffs requested that the court void the real estate conveyance from Eakle to the Kittredges, order reconveyance from Eakle to the Fergusons and the Potters, and award compensatory and punitive damages.[1] The Kittredge defendants[2] filed a timely petition for removal to the district court, 28 U.S.C. § 1441 et seq.,

on the basis of diversity, 28 U.S.C. § 1332, and by an Answer and Counterclaim averred that plaintiff John Ferguson had violated a fiduciary duty owed them as their real estate agent by attempting to purchase property for his account.[3] The litigation clusters around New Jersey law relating to specific performance of an agreement to convey real estate, malicious interference, fraudulent conveyance, damages and legality of contract.

Discovery went forward in the district court. Defendants' depositions of plaintiffs were taken on November 11, 1972. A pre-trial conference was held on January 3, 1973, at which the district court ordered that all discovery be completed within 60 days thereafter. The plaintiffs completed discovery, consisting of the deposition of John Kittredge, on January 27, 1973. In the course of his dep-

---

1. Plaintiffs' contentions are set forth in the pre-trial order:

"2. Factual Contentions of Plaintiff:

Plaintiffs contend that on or about February 11, 1972 they entered into written agreement with the defendant Eakle for the purchase of certain real estate located in Avalon, New Jersey at 506 22nd Street, all as more particularly set forth in the Agreement of Sale attached to the complaint. Plaintiffs further contend that they did everything required of them but that prior to settlement the defendant Kittredge apprached [sic] Eakle and persuaded him to breach his agreement with plaintiffs and convey the property instead to Kittredge all with knowledge of plaintiffs agreement and all with the intent to deprive plaintiffs of the benefit of their bargain. Since the subject matter is unique specific performance is an appropriate remedy as are money damages suffered by plaintiffs for lost rent issues and profits of the premises."

2. Defendant Eakle is not a party to this appeal:

"Defendant George H. Eakle has never entered an appearance, either personally or through counsel, has not participated in this litigation, and is not a party to this appeal. All references to defendants, therefore, are only to defendants Kittredge." Brief for appellants, at 2.

3. Defendants' counterclaim contentions as set forth in the pre-trial order:

"Defendants Kittredge have asserted a counterclaim against plaintiff John Ferguson for breach by Ferguson of the contractual

obligations and fiduciary duties which he owed to defendants Kittredge. The defendants Kittredge first met Ferguson in the fall of 1967. Ferguson was at that time employed by a real estate agency in Avalon, New Jersey. Ferguson showed the Kittredges a house, located at 688 [sic] 21st Street, which the Kittredges then purchased through Ferguson. The Kittredges rented the property at 668 21st Street in the summers of 1968, 1969, 1970 and 1971. Ferguson acted as their agent for the rental of the premises on all these occasions.

"In the fall of 1971, defendant John Kittredge advised Ferguson that he was considering the sale of his property at 668 21st Street, and the purchase of a bay front house, since the Kittredges wished to be located on the water. Ferguson agreed to handle the sale of the Kittredges' property on 21st Street, meanwhile keeping the Kittredges advised of bay front properties which became available in Avalon. Thereafter the 21st Street property was sold, and Ferguson accepted the commission on this sale.

"When John Ferguson first learned, on February 11, 1972, that the bay front property on 22nd Street, involved in this action, was for sale, he did not advise the defendants Kittredge of this fact. Rather, and in breach of the contractual and fiduciary duties he owed to defendants Kittredge, he undertook immediately, along with the other plaintiffs, to purchase the property for his own profit as an investiment [sic], and for a consideration which was grossly insufficient and substantially less than market value."

osition, Kittredge stated that Cleveland Thomas had told him that the agreement between the plaintiffs and Eakle was invalid and the Eakle property would be placed back on the market.

On April 23, 1973—approximately six weeks after the district court's deadline for the completion of discovery—the then counsel for the plaintiffs withdrew his appearance. Plaintiffs' new counsel later told the district court that information given by John Kittredge in his deposition revealed that Thomas, a former client of withdrawn counsel, was involved in the Eakle-Kittredge sale in such a way that he (Thomas) would be liable to the plaintiffs.[4] This potential conflict of interest was the basis for the substitution of counsel. Shortly after this substitution, new counsel moved for an order allowing dismissal of the complaint, stating as reasons therefor that it would be necessary to join Thomas as a co-defendant, that this joinder would destroy diversity, that no further discovery of the Kittredges would be required, that all discovery completed in the district court would be used in the state court proceedings, and that the defendants' counterclaim could stand independently. Over the defendants' objection, the district court dismissed the Complaint and Counterclaim on June 18, 1973—some five months after the pretrial conference and over a year after the proceedings had been removed from the state to the federal court. Prior to the entry of these orders, plaintiffs instituted a new action in the state court in June, 1973.[5]

Appellee has conceded, and quite properly, that we are obliged to vacate the district court judgment and reinstate the counterclaim.[6] Remaining for our consideration is the propriety of the order permitting dismissal of the complaint. We take as a starting point that the district court had discretionary power to order the dismissal. Ockert v. Union Barge Line Corp., 190 F.2d 303, 304 (3d Cir. 1951); Stern v. Barnett, 452 F.2d 211, 213 (7th Cir. 1971). Thus, our review is limited to a determination whether there was an abuse of this discretion.

In Ockert v. Union Barge Line Corp., *supra*, 190 F.2d at 304, Judge Goodrich explained:

There are some situations in which a plaintiff is entitled to dismiss of his own motion without any limitations by the trial judge. They are set out in Rule 41(a)(1), quoted above. The stated instances show clearly a thought-out purpose behind such provisions. They are to give a man a right to take his case out of court when no one else will be prejudiced by his doing so. The situation is quite different when answers have been filed, especially if a counterclaim is included. It is likewise an increasingly burdensome matter to one's opponent if a case has been prepared, trial date set and the party and his witnesses on hand and ready for trial. While it is quite true that the practice in many states has permitted a voluntary non-suit as of right at advanced stages in the litigation, sometimes even after submission of a case to a jury, we think the object of the federal rules was to get rid of just this sit-

---

4. We note defendants' argument that plaintiffs' former counsel knew of Thomas' involvement in the Eakle-Kittredge sale at the time of the pre-trial conference, prior to Kittredge's deposition. Plaintiff-appellees do not deny this in their brief. Since we feel that any claim plaintiffs may have against Thomas does not require dismissal of this action, the point is not important.

5. Count One repeats the same claim as the one asserted in this case and seeks the same relief. Count Two sets forth an independent claim against Thomas and seeks damages.

6. "Appellee concedes that it was error to dismiss the counterclaim when the complaint was dismissed. The motion for a voluntary dismissal was directed only to the complaint, not to the counterclaim." [Appellee's brief, at 3.]

The diversity jurisdiction supporting the counterclaim precluded its dismissal even if the complaint had been properly dismissed. *See*, The National Research Bureau, Inc. v. Bartholomew, 482 F.2d 386, 389 (3d Cir. 1973).

uation and put control of the matter into the hands of the trial judge.

So viewed, it becomes necessary to decide the presence or extent of any prejudice to the defendant by the draconian measure of dismissing plaintiff's complaint. The defendants were hauled into court in April 1972 and were required to retain counsel who removed to federal court and joined issue by filing an Answer and Counterclaim. By January of 1973, defendants had completed discovery and had had a pre-trial conference before a federal judge. They had reason to believe that in accordance with F.R.Civ.P. 16 there had been a simplification of the issues, that there was no necessity or desirability of amendments to the pleadings, and that the order entered by the pre-trial judge "control [led] the subsequent course of the action, unless modified at the trial. . . ." Moreover, in accordance with the special pre-trial order, they had reason to expect that all discovery was to be completed by March, 1973 and that trial would follow seasonably thereafter.

The district court changed all that. Fourteen months after they became defendants in one case and had gone to the expense of retaining counsel, six months after they had gone through pre-trial, and at least two months after they had expected that all discovery had been completed, they were ordered to defend anew in another court. This, we believe, amounted to prejudice—financial prejudice requiring additional counsel fees for the time and energies to be expended for the preparation and conduct of new discovery and proceedings up to trial.[7] They sustained all the emotional and psychological trauma associated with the experience of having been ready for trial in a federal court and then told that the proceedings would be started once again in the state court. Most important, they suffered the non-financial prejudice reflected by the uncertainty over their title to the bay front property. We believe that the totality of these circumstances amounted to a quantum of prejudice to the defendants so as to characterize the district court's action as an abuse of discretion.

Our conclusion is buttressed by analyzing the plaintiffs' primary reason for seeking dismissal: the desire to sue Thomas in an action at law seeking damages. We do not perceive this separate claim for money damages to be inexorably intertwined with plaintiffs' complaint in equity, which seeks to invoke the power of the court to set aside a deed previously executed from Eakle to the Kittredges and order conveyance of the property to the plaintiffs. That the plaintiffs may have a separate cause of action at law against Thomas does not appear to be compelling reason to dismiss the federal action at such a late date.[8] Indeed, we express extreme doubt that these circumstances would have been persuasive if the motion to dismiss had been presented at either pre-trial or prior to the close of discovery.[9]

The plaintiffs can draw no support from the fact that they agree that the defendants' counterclaim should still stand. Were we to uphold the dismissal of the complaint, the defendants would then be in the anomalous position of arguing essentially the same issues against the same parties in two ongoing proceedings; one in a federal court, the

---

7. At oral argument appellees' counsel informed the court that he was willing to utilize in the state court the depositions of defendants already taken in the federal court, but that it would be necessary to conduct additional discovery procedures.

8. Appellees argue that "if [Thomas is] not joined in the suit against Kittredge, a second suit would be necessary." Brief for appellees, at 7. Appellees' desire to "kill two birds with one stone" should not serve as

basis for dismissal of the complaint in this case.

9. In the pre-trial order, there was no reference to Thomas in the "Factual Contentions of Plaintiff." Other relevant provisions include:

"6. Amendments: None.

"7. Legal Issues:

Specific performance, malicious interference, fraudulent conveyance, damages, legality of contract.

"14. Other Matters: None."

other in a state court. Plaintiffs have not, and cannot, set forth a reasonable justification for such a result.

A litigant in a federal court has the right to expect that a trial on the merits will be scheduled at a reasonable time following a pre-trial conference. Similarly, given a court order requiring that parties complete discovery within 60 days, the litigant has a right to expect a trial on the merits within a reasonable time thereafter. The most a litigant should anticipate following pre-trial and the close of discovery is the normal delay associated with the calendar of the court or the assigned judge. At the very least, the trial court should minimize that delay.

The order of the district court dismissing the complaint and the counterclaim will be reversed and the complaint and the counterclaim will each be reinstated. The time of discovery having expired and the district judge who entered the order having died, upon remand to the district court, the Chief Judge of the District of New Jersey is requested to assign the matter to a judge for immediate trial. The mandate of this court will issue forthwith.