**STANDARD SPACE PLATFORMS CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–1039C.

United States Court of Federal Claims.

Aug. 26, 1997.

---

David B. Newman, Jr., La Plata, MD, attorney of record, for plaintiff. Clyde H. Wilson, Jr., Sarasota, FL, of counsel.

Grace Karaffa, Washington, DC, with whom was Assistant Attorney General, Frank W. Hunger, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge:

### INTRODUCTION

This opinion addresses the Plaintiff's Motion For Dismissal Without Prejudice, which was filed on October 31, 1996, and Defendant's Request For Dismissal With Prejudice, which was filed on November 5, 1996. Previously, on November 30, 1994, the plaintiff, Standard Space Platforms Corporation, filed a complaint against the United States for patent infringement pursuant to 35 U.S.C. §§ 283 and 284, to which defendant filed its answer on March 31, 1995. In said complaint, plaintiff, a Delaware corporation with its principal place of business in Virginia, asserted eight counts of Fifth Amendment takings against the United States Air Force and its contractor, Spectrum Astro, a California-based competitor of the now-defunct plaintiff corporation. Specifically, plaintiff alleges that miniature sensor technology integration (MSTI) satellites made by Spectrum Astro for the Government infringe on plaintiff's two patents.[1] For the reasons stated hereinafter, this court denies both plaintiff's motion to dismiss and defendant's motion to dismiss.

---

1. United States Letter Patent No. 5,152,482, entitled MODULAR MOTHER SATELLITE BUS FOR SUBSIDIARY PAYLOADS, was granted to Frederick W. Perkins and Philip J. Kananen on October 6, 1992. United States Patent Letter No. 5,271,582, also entitled MODULAR MOTHER SATELLITE BUS FOR SUBSIDIARY PAYLOADS, was granted to Perkins and Kananen on December 21, 1993.

2. On June 7, 1995, defendant served interrogatories and requests for production of documents on the plaintiff. After having been granted one extension by this court to respond to defendant's

### FACTS

Following the filing of the answer on March 31, 1995, the parties filed a joint preliminary status report on May 1, 1995. In furtherance thereof, this court issued a pretrial order dated May 3, 1995, in which the schedule for the instant action was determined. The order specified that discovery be completed by May 31, 1996. At that time, deadlines for the filing of dispositive motions and pretrial submissions were established and the pretrial conference date was scheduled.

Prior to the joint preliminary status report, plaintiff began to conduct discovery. Specifically, on March 27, 1995, plaintiff first served interrogatories and requests for documents on defendant.[2] Three weeks later, on April 18, 1995, defendant filed an unopposed motion for an extension of time of 91 days to respond to plaintiff's first discovery requests. This court granted the Government's motion, directing defendant to respond by July 31, 1995. On said deadline date, defendant responded to plaintiff's request for production of documents. However, defendant failed to answer Standard Space's interrogatories or, in the alternative, to request another extension. Similarly, plaintiff failed to motion this court to compel defendant to comply with this court's discovery deadlines, as directed by RCFC 37.[3] Eventually, on October 16, 1995, defendant filed a motion for a protective order with respect to the documents requested by plaintiff's March 27, 1995 interrogatories.

In response to the Government's motion for a protective order, plaintiff filed a motion on October 31, 1995, for and was granted, on November 2, 1995, an extension of time, until

---

discovery, plaintiff responded to the Government's discovery requests on August 7, 1995.

3. RCFC 37(a)(2) provides that: "[i]f ... a party fails to answer an interrogatory submitted under Rule 33, ... the *discovering party* may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request." (emphasis added). RCFC 37(b) and RCFC 37(d) then proceed to outline the potential sanctions for noncompliance with such an order.

November 16, 1995, to respond to defendant's motion. Twenty-five (25) days after the expiration of the extended deadline period, on December 11, 1995, this court allowed plaintiff to file its memorandum in opposition to defendant's motion for a protective order. Subsequently, on April 23, 1996, Spectrum Astro, acting as an intervenor, requested to be heard on the motion for the protective order. After extensive proceedings on both the motion to be heard and the motion for the protective order, this court first issued an order on April 26, 1996, denying Spectrum Astro's motion to be heard, and then, on June 17, 1996, issued a protective order.[4] By this Protective Order, both plaintiff's counsel and Standard Space's president, Frederick W. Perkins, would be permitted to view the documents at issue in the protective order dispute. The decision to allow Mr. Perkins access to the documents was based on his sworn testimony that Standard Space was a defunct corporation that would no longer be in competition with Spectrum Astro.

While awaiting this court's decision on the motion for a protective order, the parties, on April 26, 1996, filed a joint motion for an extension of the cut-off dates for discovery and other deadlines. On May 1, 1996, this court issued an order granting the joint motion and extending discovery until December 2, 1996. In that order, this court unequivocally and definitively stated that *"[n]o further enlargements for these purposes shall be granted."* Order, May 1, 1996, p. 2.

Since the issuance of the Protective Order on June 17, 1996, Standard Space has failed to prosecute its case to any significant extent. Ten days after the issuance of the Protective Order, the two parties met for two hours to examine a box of confidential documents. Since that meeting, plaintiff asserts that Standard Space has "actively pursued possible settlement" with the Government.

Pl. Mot. For Dismissal Without Prejudice, p. 4. Conversely, defendant effectively retorts that "[s]ince the June 27 meeting with plaintiff's counsel, the Government has spent less than an hour on settlement activities in this case [with plaintiff]." Second Declaration of Grace Karaffa, p. 2. Additionally, the Government asserts that "[p]laintiff [has] *never* presented a settlement offer to the Government, and the Government [has] *never* presented one to plaintiff." *Id.* We further note that plaintiff has failed to submit any affidavits or other documents supporting its recent activities, beyond an affidavit from Mr. Perkins stating that he had contacted alternative counsel. Whereas the Government has thoroughly documented its activities in the instant action, plaintiff has failed to similarly document its litigative activities, such as interviewing witnesses, consulting experts, or deposing parties, in its affidavits.

Perhaps the most disturbing fact of the instant suit stems from plaintiff's unexplained failure to inspect the critical documents in California which were the subject matter of the Protective Order. These voluminous documents, we are advised, comprise "about 800 drawings" that fill approximately "twenty-three (23) five-drawer filing cabinets and twenty (20) large boxes." Def. Mot. for Protective Order, p. 2. As this court noted, "[a]n examination of plaintiff's requests for production [of the drawings in California] reveals that, collectively, they are extremely broad in scope, essentially encompassing every document in the government's possession relating in any way to the spacecraft alleged to infringe plaintiff's patents." Order, May 21, 1996, p. 4.[5] To rephrase, the vast array of documents situated in California constitute the fundamental discovery needs for plaintiff's case. Thus, in order to prove that Standard Space has a patent infringement case *at all* against the Government, plaintiff

---

4. Said protective order was based on a joint modified proposed protective order filed by the parties on June 7, 1996, which was filed pursuant to this court's order of May 21, 1996, which granted only in part defendant's motion for a protective order.

5. To demonstrate the vast scope of plaintiff's discovery requests, we present below an excerpt therefrom:

REQUEST NO. 3: All documents referring to the MSTI spacecraft subsystem or assembly.

REQUEST NO. 4: All documents referring to the conception, demonstration, and/or testing of the MSTI Spacecraft.

REQUEST NO. 5: All documents referring to the engineering and manufacturing development of MSTI Spacecraft.

Pl. Opp. Br. to the Protective Order, at E28.

would have to inspect the documents in California. To date, neither Mr. Perkins nor plaintiff's counsel have traveled to California to examine the documents. Additionally, as the Government notes, "*[a]t all times*, the Government and its prime contractor, Spectrum Astro, were willing to allow *plaintiff's counsel access* to the voluminous documents in California." Def. Req. For Dismissal With Prejudice, p. 4 (emphasis added).

Coupled with the fact that plaintiff has failed to inspect and analyze the documents, by counsel at any time prior to or after June 17, 1996, and/or by Mr. Perkins after June 17, 1996, which plaintiff deems critical to its case, is the equally unsettling observation that plaintiff expended a considerable amount of time, money, and effort in its opposition to defendant's motion for a protective order. Once the June 17, 1996 Protective Order was issued, it would seem reasonable to assume that it was in the best interest of Standard Space to inspect the documents as soon as possible in California. The court makes this assumption based on several observations. First, plaintiff fully understood the voluminous nature of the documents in California. Second, Standard Space also was cognizant of the fact that the California documents were the essential discoverable documents in the instant case. Third, logic would seem to dictate that, as a condition precedent to negotiations, plaintiff would need to comprehend how the pertinent discovery supported or contradicted Standard Space's allegations against the Government.

On or about September 24, 1996, Standard Space submitted an unopposed motion for withdrawal of counsel and for an enlargement of the cut-off dates for discovery. Due to defects in the motion, this court returned plaintiff's motion unfiled on October 1, 1996. Thereafter, on October 7, 1996, plaintiff resubmitted its motion. In said motion, plaintiff tersely stated that "[t]he undersigned moves this Court for withdrawal of David B. Newman, Jr. as counsel of record for this case, *for professional reasons*." Pl. Mot. For Withdrawal Of Counsel And For An Enlargement Of Cut–Off Dates For Disc., p. 1 (emphasis added). Additionally, plaintiff

stated that—"[t]he plaintiff moves for an extension of the cut-off dates for discovery, and for the continuance of the Pre–Trial Conference and the Trial, in order for plaintiff's replacement counsel to have adequate time for taking additional discovery he may want, and prepare for trial." *Id.* at 1–2.

In this court's denial of plaintiff's motion, it was stated that "[a]s of the current discovery deadline date, *i.e.,* December 2, 1996, the parties will have had 18 months to complete discovery—a sufficiently reasonable period of time in which to do so on this record." Order, Oct. 17, 1996, p. 1. Additionally, we noted that RCFC 81(d)(8) required plaintiff corporation to be represented, at all times, by counsel. Thus, this court directed Standard Space to retain new counsel and thereafter move for substitution on or before October 31, 1996.

Having encountered the last day of the period within which to secure alternate counsel, Standard Space, on October 31, 1996, motioned for dismissal without prejudice, pursuant to RCFC 41(a)(2). In said motion, plaintiff avers that dismissal without prejudice is proper in the instant suit inasmuch as there are no counterclaims pending, nor would dismissal serve to prejudice defendant. Pl. Resp. To Def.'s Mot. For Dismissal With Prejudice, p. 4. Additionally, Standard Space asserts that the delays to date in the prosecution of the instant suit are the direct result of defendant's motion for the protective order. Pl. Mot., p. 6. Finally, plaintiff states that Standard Space approached alternate counsel after this court's order on plaintiff's motion for withdrawal of counsel, and alternate counsel refused to review the case because of the limited time remaining in the discovery period. *Id.* Thus, by plaintiff's reasoning, this court should grant dismissal without prejudice so that Standard Space can secure alternate counsel and have the "*opportunity* to litigate at all." Pl. Resp., p. 6.

On November 5, 1996, the Government filed its opposition to plaintiff's motion for dismissal without prejudice, and in turn moved for dismissal with prejudice, pursuant to RCFC 41(b), for failure to prosecute. In defendant's motion, the Government argues that the instant action was within a month of

the close of discovery, and that Standard Space has "utterly failed to prosecute its case." Def. Req. For Dismissal With Prejudice, p. 6. Additionally, defendant avers that the Government has expended considerable time and resources in defending the instant suit. *Id.* at 3. By the Government's reasoning, Standard Space should not be permitted to benefit from plaintiff's own lack of diligence and prosecutorial delay and, thus, dismissal with prejudice is warranted on this record.

## DISCUSSION

When assessing the bona fides of the instant motions, this court could reach one of three possible conclusions. First, we could grant plaintiff's motion to dismiss without prejudice pursuant to RCFC 41(a)(2); second, we could grant defendant's request/motion to dismiss with prejudice for failure to prosecute pursuant to RCFC 41(b); or, lastly, the court could deny both motions and order that the case proceed with dispatch.

### I. *Plaintiff's RCFC 41(a)(2) Motion*

We view the dispositive question to be decided, at the outset, to be whether sound discretion warrants the allowance of Plaintiff's Motion to Dismiss Without Prejudice, or whether the grant of said motion would constitute an abuse of discretion. The impetus behind RCFC 41(a)(2) is to allow plaintiff, on one occasion, to dismiss its case voluntarily. In pertinent parts, RCFC 41(a)(2) states that:

> [A]n action shall *not* be dismissed at the plaintiff's instance *save upon order of the court and upon such terms and conditions as the court deems proper.* If a counterclaim has been pleaded ... the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.[6]

(emphasis added). As Judge Rader has noted in his *Deuterium* opinion, *infra,* RCFC 41(a)(2) makes two points as to the court's

role in voluntary dismissal: first, that the court has considerable latitude and discretion in issuing its decision, and second, that dismissal without prejudice, rather than with prejudice, is the norm. *Deuterium Corp. v. United States,* 21 Cl.Ct. 132, 134 (1990). However, this court notes that the most prominent point in RCFC 41(a)(2) is that an action shall not be dismissed *"save upon order of the court."*

■ Although the exercise of discretion under RCFC 41(a)(2) does not generally conform to a precise evaluation formula, the three broad categories established in *Deuterium* seem prudent. In *Deuterium,* plaintiff asserted patent infringement, Fifth Amendment takings, and breach of implied and express contracts against the United States. The case had been pending for approximately eight years before plaintiff filed for voluntary dismissal pursuant to Rule 41(a)(2). Defendant similarly countered that the protracted nature of the suit warranted dismissal *with prejudice,* presumably also under Rule 41(a)(2). In resolving these issues, the court evaluated the motion to dismiss through the use of a three-pronged approach, which examined—(i) the burden on the defendant if the case were to be dismissed without prejudice, (ii) the progress of the litigation, and (iii) the diligence and good faith of the plaintiff. *Deuterium,* 21 Cl.Ct. at 134. Ultimately, on the basis of the facts in *Deuterium,* that court determined that all three prongs of the test were met. Accordingly, defendant's motion for dismissal with prejudice was granted. In the instant case, the use of the *Deuterium* standard is completely equitable because both parties filed their memoranda embracing the *Deuterium* three-pronged test. Thus, this court sees no reason why the *Deuterium* method should not be deemed to be the exercise of sound discretion in the case at bar.

■ Before commencing our three-part analysis of plaintiff's motion to dismiss without prejudice, two further points need to be addressed. First, one factor that must be

**6.** RCFC 41(a)(2) tracts Rule 41(a)(2) of the Federal Rules of Civil Procedure in all material particulars.

remembered when considering a motion for voluntary dismissal is that the situation is quite different once an answer has been filed. *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974). In other words, RCFC 41(a)(2) motions to dismiss are given much more stringent scrutiny *after* an answer has been filed in an action. Second, when comparing the instant case to the facts in *Deuterium*, one must remember that, in *Deuterium*, the plaintiff made its motion for voluntary dismissal under RCFC 41(a)(2) and defendant filed its objection and requested dismissal with prejudice, presumably under the same rule. In the instant action, plaintiff has motioned under RCFC 41(a)(2), and defendant has objected and requested dismissal with prejudice pursuant to RCFC 41(b). Thus, unlike *Deuterium*, the defendant in the instant action requests a denial of plaintiff's RCFC 41(a)(2) motion.

### A. Unreasonable Burden on Defendant

■ The effect of a dismissal *without* prejudice is to place the plaintiff in the *same* legal position it would have been in if he had never brought the suit. *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir.1976). However, when considering such a motion to voluntarily dismiss, the court must keep uppermost in mind the effected interests of the defendant, because it is its position which must be protected. *Id.* at 604. In such circumstances, courts often deny a motion for dismissal without prejudice, or order dismissal with prejudice, in cases where the defendant has incurred significant expense and time in preparation of the case for trial. *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969). However, when evaluating the adverse burden on the defendant, the mere prospect that defendant may be open to a second suit on the same allegations by plaintiff in the uncertain future does not, *ipso facto*, provide sufficient grounds to find an inequitable burden on defendant. *Westlands Water District v. United States*, 100 F.3d 94, 96 (9th Cir.1996).

In *Deuterium*, the court determined that, on the basis of the facts, there was a substantial and real burden on the defendant. Specifically, the court there stated that four facts led to the finding of said burden, *i.e.*, the suit had been pending for eight years; there had been 72 motions filed during litigation of the case; plaintiff was using its motion to dismiss to avoid a ruling on defendant's dispositive motion; and there had been an extensive battle between the parties over a protective order.

■ In the suit at bar, Standard Space conversely argues that the adverse burdens on the Government, if any, are minimal. Plaintiff premises this argument on the assumptions that—the instant action has been pending only for two (2) years; few motions have been filed during those two years; defendant does not have a dispositive motion pending; and dismissal *without prejudice* is compelled in order for Standard Space to "litigate at all." Pl. Resp., p. 6. Defendant, as expected, retorts that the burden on the Government is quite substantial. In support of this argument, defendant avers that— there has been an extended and expensive battle over the Protective Order; the Government would be open to suit by plaintiff until the distant end of the applicable statute of limitations; discovery has also been expensive and extensive to date; and the Government has not committed more resources to the instant action because of plaintiff's weak case on the merits and its failure to prosecute at all. Second Declaration of Grace Karaffa, pp. 1–2.

Although this court does find merit in some of plaintiff's arguments, it would seem that defendant has offered one reason that is far superior in terms of clearly defining a substantial burden that would be placed on the Government if plaintiff's motion were to be granted without prejudice. If this court granted dismissal without prejudice, then defendant would have to carefully maintain the California documents until the discovery period of the second suit was completed or until the applicable statute of limitations has elapsed. As stated *supra*, the quantum of documents that defendant has compiled and must maintain in California fill "twenty-three (23) five-drawer filing cabinets and twenty (20) large boxes." Def. Mot. for Protective Order, p. 2. The court is convinced that the studious maintenance of such a massive num-

ber of documents is indeed a substantial burden on the Government. Also, this court is careful to note that this burden, in conjunction with the other less egregious burdens that would have to be borne by the Government, represents in the aggregate a heavy financial burden on defendant. If this aspect of the analysis were to stand alone, then the extent of the burden on defendant might warrant only dismissal without prejudice, but with costs to the defendant. However, this court does not have to rule fragmentarily on such issues because, when the totality of the circumstances are evaluated, this court finds sufficient reasons in the aggregate for a denial of plaintiff's RCFC 41(a)(2) motion.

## B. Progress of Litigation

■ As the *Deuterium* court properly noted, "[d]ismissal with prejudice is appropriate where there have been extensive proceedings with a trial clearly in sight." *Deuterium*, 21 Cl.Ct. at 135 (citations omitted). In fact, it is settled that, after discovery is completed, "[t]he most a litigant should anticipate ... is the normal delay associated with the calendar of the court or the assigned judge." *Ferguson*, 492 F.2d at 30. This court notes that there is very little case support on the topic of exercising discretion when considering progress of litigation. However, it would seem appropriate for a court, when addressing such a topic, to continually weigh the burden placed both on defendant and the court against the concerns of the dispensation of justice and fairness.

In *Deuterium*, the court found that the eight-year course of litigation, riddled with its numerous rulings and orders, was more than sufficient to determine that the case had progressed to such a point that voluntary dismissal *without* prejudice was *not* within the discretion of the court. The *Deuterium* court also was very careful to note that the case was just two months away from going to trial. Thus, the court decided that the late stage of litigation mandated that dismissal with prejudice be ordered.

In the instant case, Standard Space begins with the argument that the case has been pending merely for two years, and that very few motions have been filed by the parties. Pl. Resp., p. 3. Second, plaintiff argues that the Government has conducted very little discovery, as evidenced by defendant's failure to depose a single person. Pl. Resp., p. 3. In response to plaintiff's assertions, the Government makes two arguments. First, the defense notes that, at the time of these pleadings, 17 months of the 18-month discovery period have passed. Second, the defendant maintains that the Government has undertaken a great deal of activities in the instant action. Defense proceeds to meticulously list all of the discovery that the Government has undertaken in defense of subject proceedings. These discovery activities ranged from defending depositions, to serving and responding to interrogatories, to consulting an expert, and to the Protective Order battle. Second Declaration of Grace Karaffa, p. 1.

This court feels that it is necessary to review some of the operative facts that are imperative to the evaluation of this category and comment on their impact. First, the instant action has been pending for approximately 23 months. Whereas this court agrees with Standard Space that two years is not an *inordinate* amount of time for a case to be pending, we feel that two years still represents a *substantial* amount of time. Second, the court notes that the Protective Order dispute consumed a great deal of time and expense of both the parties and the court. Third, at the time of plaintiff's motion for dismissal (October 31, 1996), there were just 32 days left in the extended discovery period. At the time of plaintiff's motion for dismissal, the case had proceeded to such a point where the parties were already five months beyond the original (May 31, 1996) discovery deadline. As is common knowledge, after the close of the discovery period, a case proceeds to pretrial submissions and a pretrial conference, and then to trial. Thus, although the instant action was not two months away from trial, as in *Deuterium*, the trial in the instant action still was clearly "in sight" by the *Ferguson* standard.

Thus, on the totality of this record, we find more than sufficient reason within the court's discretion to conclude that the case has advanced to such a point that dismissal without

prejudice would be unfair to both the defendant and to the court. To rule otherwise would be to permit a plaintiff to dismiss a case without prejudice where the end of discovery and trial were clearly in sight. If such hospitable action were commonplace, then many parties would incur substantial frivolous expenses to effect favorable judge shopping, and the dockets of the federal courts would be even more congested than they currently are. This we cannot countenance, except in grave circumstances duly justified, which does not exist here at bar.

## C. Plaintiff's Diligence and Good Faith

■■ "Some of the factors justifying denial [of dismissal without prejudice] are ... excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action." *Pace*, 409 F.2d at 334. Moreover, as *Deuterium* noted, "[i]nsufficient explanation of the need for dismissal, using dismissal to deprive defendant of a ruling on a dispositive motion, and excessive delay are among the factors which justify dismissal with prejudice." *Deuterium*, 21 Cl.Ct. at 135 (citing *Pace*, 409 F.2d at 334). Similarly, when examining a motion for dismissal without prejudice, the factors listed in *Pace* as reasons for dismissal with prejudice also would serve to justify the denial of a motion for dismissal without prejudice. Further, when examining the existence of diligence and good faith in the instant action, this court believes that it would be logical to review, first, if plaintiff was allotted a reasonably sufficient time to conduct discovery, and second, if plaintiff's actions evidence diligent prosecution.

Both parties present basic arguments on the subject of whether the court permitted ample time for discovery. Plaintiff plainly asserts that two activities precluded it from being able to complete discovery within the court-appointed time. First, plaintiff asserts that resolution of the Protective Order issue deprived plaintiff of the necessary time needed to conduct thorough discovery. Indeed, plaintiff plainly states, "[i]n July 1996, plaintiff had its first opportunity to inspect documents at the government's premises." Pl. Mot., p. 4. Second, plaintiff declares that, during the months of August and September

1996, plaintiff actively sought settlement. *Id.* In reply, defendant warmly avers that Standard Space had *more* than enough time within which to conduct reasonable discovery. In fact, defendant emphasizes that *plaintiff's counsel* has been permitted *continuous and unrestricted access* to the California documents throughout the instant action. Def. Req., p. 4. Indeed, defendant even hints of confusion over the reasons behind plaintiff's counsel's failure to review the California documents at the earliest point in time of May 1995. *Id.*

In order to resolve this issue, the court must explicate several of the operative facts. First, we note that plaintiff and defendant have been accommodated for the unavoidable delays associated with the protracted nature of the resolution of the motion for a protective order in the parties' request for an extension of cut-off dates for discovery. *See* Joint Mot. for Extension of Cut–Off Dates For Disc., April 26, 1996. In said joint motion, the parties stated that—"[d]ue to the volume of discovery that will be necessary, the pending Motion for Protective Order, and the involvement of out-of-state counsel and witnesses, the parties believe that it will be impossible to complete discovery by May 31, 1996." Joint Mot., p. 2. Accordingly, the parties requested that the one-year discovery period of May 1995 to May 1996 be extended by six months, to December 2, 1996, and this court granted said motion, with the proviso that no further enlargements for these purposes would be granted.

The other point that we must ventilate specifically refers to plaintiff's October 7, 1996 Motion For Withdrawal Of Counsel And Extension Of Cut–Off Dates For Discovery. In said motion, plaintiff argues, notwithstanding the previous admonishments, that an extension until June 2, 1997, would be sufficient to permit new counsel to complete discovery. To rephrase, plaintiff is proffering the argument that the six-month extension which this court granted the parties to December 2, 1996, in order to account for the motion for the protective order was not sufficient for current counsel, who is quite familiar with the dynamics of the instant action, to complete discovery; however, plaintiff feels

that an additional six-month extension to June 2, 1997, would be sufficient for alternative counsel, who is undoubtedly less familiar with the instant action than current counsel, to complete discovery. Such reasoning defies logic. Appropriately, this court denied said motion for extension on October 17, 1996. Then, inexplicably, just two weeks later, on October 31, 1996, in its motion for dismissal without prejudice, plaintiff presented the same flawed logic to this court, with the implicit desire that a different, and favorable, outcome be realized.

When evaluating if the parties were granted adequate time to conduct reasonable discovery, the court must, of course, rely to some extent on the opinions of the parties themselves. When the parties filed the joint motion on April 26, 1996, the plaintiff and defendant stated that a six-month extension to December 2, 1996, would permit discovery to be completed within that reasonable period. In the absence of significant intervening or unforeseen events effecting the reasonableness of the discovery schedule since the May 1, 1996 enlargement period, we are not inclined to determine that the time allotted to December 2, 1996, for discovery was insufficient. Accordingly, this court concludes that the aggregate 18–month discovery period was sufficient time for reasonable discovery.

Having found that the foregoing discovery schedule of 18 months was fair and adequate, the court must now determine whether, against that background, plaintiff failed to prosecute its case with reasonable diligence and good faith. Both parties and this court agree that the documents of vital importance to the prosecution of the instant suit are located in California. Prior to the June 17, 1996 Protective Order, only plaintiff's counsel had unbridled access to inspect said documents. Only after the issuance of the Protective Order could plaintiff corporation itself, through its president Mr. Perkins, view said documents through the December 2, 1996 discovery period. Notwithstanding the 18–month discovery period (18 months by counsel and six months by Mr. Perkins), to date, *neither* plaintiff's counsel nor Mr. Perkins have traveled to California to inspect the discoverable materials.

In the absence of the assertion of a compelling reason for plaintiff's failure to conduct discovery of the pertinent documents during this 18–month period, we are constrained to find the inaction of plaintiff and plaintiff's counsel to have been clearly dilatory. In a vain attempt to explain plaintiff's failure to conduct discovery during the six-month period following the Protective Order of June 17, 1996, plaintiff avers that—"[s]ubsequent to the meeting on June 27, 1996 [with defense counsel], possible options for settlement were discussed. These discussions continued through the summer. It was not until September that it became apparent that a settlement agreement would not be forthcoming." Pl. Resp., p. 5. Conversely, and in response to plaintiff's argument, the Government states, as previously noted, that "[s]ince the June 27 meeting with plaintiff's counsel, the Government has spent less than an hour on settlement activities in this case." Second Declaration of Grace Karaffa, p. 2. Thus, it is clear beyond cavil that plaintiff's first explanation for Standard Space's failure to inspect the California documents following the Protective Order is patently untrue. Further, the only other reason that plaintiff offers for its failure to timely conduct discovery is Standard Space's need to secure alternative counsel—an argument that this court has rejected previously.

As the Federal Circuit has noted in the past, and appropriate here at bar—" '[d]elay and excessive expense now characterize a large percentage of all civil litigation. The problems arise in significant part, as every judge knows, from abuse of the discovery procedures....' " *Ingalls Shipbuilding, Inc. v. United States,* 857 F.2d 1448, 1450 (Fed. Cir.1988) (citation omitted). The sentiment of the Federal Circuit was even more assertively stated by the Ninth Circuit when the court observed that—"[l]itigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism." *G–K Properties v. Rede-*

*velopment Agency of the City of San Jose,* 577 F.2d 645, 647 (9th Cir.1978). In order to ensure that discovery abuses did not occur here at bar, this court stated in its grant of the parties' joint motion to. extend discovery that *"[n]o further [discovery] enlargements for these purposes shall be granted."* Order, May 1, 1996, p. 2. This court made such an order, pursuant to RCFC 77.1(a), which definitively states that "[c]ase management is the responsibility of the judge to whom the case is assigned [and] ... [e]ach judge shall manage assigned cases so as to provide for the prompt dispatch of business."

Notwithstanding said unequivocal order, plaintiff has, in reality, attempted to circumvent the inherent authority of this court by filing its motion to dismiss without prejudice. This is so whereas plaintiff declares that— "[b]ecause of this impending [discovery] deadline, it is *not possible* for plaintiff to retain alternative counsel and *to thereby comply with the court's order* for retention of a new counsel by October 31, 1996." Pl. Mot., p. 6 (emphasis added). Although plaintiff may assert that this motion for voluntary dismissal is premised on the desire to substitute counsel and not to violate any court orders, the harsh reality of this record is that this October 31, 1996 motion is being brought by a plaintiff who has been clearly dilatory and now seeks shelter from this court's firm order. If the court were to allow such a transparent act, we would be ignoring the warning that there is a profound need to "... shield[] the court from the intolerable circumstances that would obtain if 'parties [were] free to pick and choose which of the court's orders they will obey.'" *First State Bank of Matador, Texas v. United States,* 14 Cl.Ct. 537, 540 (1988). In other words, just as *Deuterium* "smack[ed] of litigation strategy, rather than financial difficulty," the instant suit suggests a modicum of discovery abuse and counsel's subtle desire to place the blame for his own inactions on another. *Deuterium,* 21 Cl.Ct. at 136.

If the court were to grant plaintiff's motion to dismiss *without prejudice* on this record, we would obviously be mandating a dangerous precedent. For example, any party, whose case does not follow the hospitable path that the party had anticipated, could simply aver vague reasons for dismissal without prejudice in an attempt to remedy the situation by obtaining a clean slate. Courts must deny dismissal without prejudice when a party attempts to contravene the authority of the courts, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).

In light of plaintiff's failure to proffer a significant reason for dismissal, and in conjunction with plaintiff's fundamental failure to conduct the pertinent discovery of the California documents within the 18–month period, or to provide a sufficient explanation for voluntary dismissal without prejudice, it is clear beyond cavil that plaintiff has failed to proceed in this case with uncompromising diligence and good faith. Given the late stage of progression of the instant action, as well as the undue burden that would be placed on the defendant if this court were to grant plaintiff's motion to dismiss without prejudice, this court finds that there are more than sufficient grounds to exercise its discretion, and we hereby deny plaintiff's motion for dismissal without prejudice.

Next, the issue is whether we should grant defendant's motion to dismiss with prejudice.

## II. *Defendant's Request/Motion For Dismissal For Failure to Prosecute*

■ When considering defendant's request/motion to dismiss *with prejudice,* pursuant to RCFC 41(b), we view the threshold question to be—whether sound discretion warrants the allowance of defendant's motion, or whether the grant of said motion would be an abuse of discretion. Plaintiff asserts that the granting of such a motion would be wholly improvident because Standard Space has not only fully complied with all court orders but it has also conducted significant discovery in the instant action. Moreover, plaintiff blames any periods of inactivity on defendant's motion for a protective order. Finally, Standard Space notes

that there was still more than one month remaining in discovery [INSERT HERE?]. Conversely, defendant avers that plaintiff has "utterly failed to prosecute its case." Def. Req., p. 6. Defendant notes, for example, that Standard Space has failed to explain why *plaintiff's counsel* did not travel to California to inspect the documents at any time during the now-expired 17 months of discovery. Also, defendant strongly notes that the plaintiff has also failed to explain the reasons behind Mr. Perkins' failure to inspect the documents at any time after the Protective Order of June 17, 1996, up to the close of discovery on December 2, 1996.

We begin our analysis of defendant's motion by examining the specific language of RCFC 41(b), which provides as follows:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, the court may dismiss on its own motion or defendant may move for dismissal of an action or any claim. Unless the court in its order for dismissal otherwise specifies, a dismissal ... operates as an adjudication upon the merits.

In order to conduct a more efficient and focused evaluation of defendant's RCFC 41(b) motion to dismiss, we deem it necessary to first clarify what is specifically at issue at bar. Whereas RCFC 41(b) provides for dismissal *with prejudice* for failure to prosecute, failure to comply with the rules, or for failure to follow court orders, the only issue that is present here is plaintiff's alleged failure to prosecute. Thus, our evaluation of the instant case shall be limited solely to determining whether plaintiff did indeed fail to prosecute its case.

While the courts have been hesitant to provide specific operative factors which should guide the evaluation of involuntary dismissal under RCFC 41(b), case law makes clear that such rulings are to be determined on a case-by-case fact and circumstance basis which should be left solely within the sound discretion of the trial court. *Taub v. Hale*, 355 F.2d 201, 202 (2d Cir.), *cert. denied*, 384 U.S. 1007, 86 S.Ct. 1924, 16 L.Ed.2d 1020 (1966). *Link v. Wabash R.R.*

*Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).[7] When exercising the court's power of discretion, the ultimate consideration should be to protect and further the integrity of an orderly and speedy pursuit of justice. *Id.* However, when making such a statement, this court is mindful of the fact that dismissal with prejudice represents a very drastic sanction that should only be exercised when appropriate. *National Hockey League*, 427 U.S. at 643, 96 S.Ct. at 2781. Stated differently, " '[t]here is [a] strong policy ... against depriving a party of his day in court.' " *Ingalls*, 857 F.2d at 1451 (citation omitted). Thus, "there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Societe Internationale v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958).

The pertinent case to the instant action is *Link v. Wabash R.R. Co., supra*, where the United States Supreme Court affirmed the District Court's dismissal with prejudice for failure to prosecute. In *Link*, plaintiff's counsel failed to attend a scheduled pretrial conference. Two hours later, the District Court dismissed the case for two reasons. First, the court observed that "counsel had failed 'to indicate · ... a reasonable reason' for this nonappearance" during counsel's phone conversation with the court. *Link*, 370 U.S. at 628–29, 82 S.Ct. at 1387–88 (citing *Link*, 291 F.2d 542 (7th Cir.1961)). Second, the court noted that the case had a long and protracted history which supported dismissal. *Id.*

In affirming the decisions of the lower courts, the Supreme Court determined that the District Court judge's dismissal was not an abuse of discretion. The Supreme Court predicated its ruling on two assumptions. First, it was within "the bounds of permissible discretion for the [trial] court to conclude that the telephone excuse offered by petitioner's counsel was inadequate to explain his failure to attend." Second, "it could be reasonably inferred from his absence, as well as

---

7. In *Link,* the Supreme Court interprets a dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which mirrors RCFC 41(b) in all material particulars.

from the drawn-out history of the litigation, that petitioner had been deliberately proceeding in a dilatory fashion." *Id.* at 633, 82 S.Ct. at 1390 (footnotes omitted). In addition to those two observations, the Court applied a totality-of-the-circumstances approach to evaluate and affirm the order of dismissal. *Id.* at 634, 82 S.Ct. at 1390.

■ Consistent with the totality-of-the-circumstances approach employed in *Link,* we find it compelling to restate and emphasize the facts and events which are pivotal to the evaluation of defendant's motion to dismiss for failure to prosecute. In the instant case, the plaintiff has not violated either court order or the rules of this court, except to the extent that it failed to complete its discovery within the 18–month discovery period (*i.e.,* by December 2, 1996). Until the time that these parties filed their motions, discovery had been open for 17 months. At the time of plaintiff's motion for voluntary dismissal without prejudice, there were 32 days remaining in the 18–month discovery period. From the beginning of the discovery period, Standard Space's *counsel* could easily have inspected the California documents. Additionally, from the time of the June 17, 1996 Protective Order, Standard Space's president, Mr. Perkins, also had reasonable and adequate access to said documents. Thus, it is indisputable that, during the entire course of the litigation of the instant action, both Mr. Perkins and plaintiff's counsel failed to conduct discovery of the California documents, as ordered by this court, which were arguably crucial to plaintiff's claim.

Notwithstanding plaintiff's failure to inspect those documents as required, Standard Space has apparently complied with most of the other rulings and orders as a party to this litigation. Additionally, it has replied in a timely manner to all of defendant's discovery requests. More importantly, plaintiff's behavior has not evidenced any prolonged periods where Standard Space has failed to respond either to the court or to the Government. Now, approximately five months after the issuance of the Protective Order, defendant moves for dismissal *with prejudice for failure to prosecute.*

Although plaintiff's behavior, and especially the conduct of plaintiff's counsel, has been dilatory and somewhat defiant to the court, we cannot, in exercising our sound discretion, on this record, permit Standard Space to lose its only opportunity to have a hearing on the merits. This conclusion is based on the following observations. First, the court realizes that Standard Space still had one month, in the absence of these motions to dismiss, in which to complete the scheduled discovery. Nevertheless, this court cannot determine that, if undertaken with a sense of urgency and efficiency, plaintiff could have completed its discovery within the remaining period. Second, we are aware that any burdens to date on the Government have been almost wholly economic in nature. Although the burdens on defendant are the direct result of plaintiff's dilatory behavior, these burdens would not appear to be so overwhelming as to warrant the supreme sanction of dismissal with prejudice. Third, even though case law supports holding Standard Space directly accountable for the actions of its counsel, we do not feel that sound discretion will countenance the court to banish this plaintiff from this Court for the actions of its counsel. This is so notwithstanding the U.S. Supreme Court's pronouncement that—"[p]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 633–34, 82 S.Ct. at 1390 (citation omitted). In short, on this record, we hesitate to hold Standard Space accountable for the discovery delays of its counsel *prior* to the issuance of the Protective Order. This court does, however, hold plaintiff corporation responsible for the failure to conduct discovery of the California documents following the June 17, 1996 protective order. Ultimately, in the opinion of this court, Standard Space's five-month period of inactivity since the issuance of the Protective Order can be termed as dilatory, but it is not determined by this court to be sufficiently egregious or contumacious in nature to warrant the granting of defendant's motion to dismiss with prejudice. Fourth, this court believes that, while judicial efficiency is very important, it is not so paramount as to overshadow a plaintiff's right to

fundamental justice and fairness. Accordingly, defendant's motion for dismissal with prejudice pursuant to RCFC 41(b) for failure to prosecute is hereby denied.

### III. *The Impact of Denying Both Motions for Dismissal*

In order to clarify the rationale behind our denial of both motions to dismiss, a brief overview of the ends which this court desires to achieve is appropriate. First, this decision affords plaintiff the full opportunity to have its case decided on the merits, if plaintiff proceeds hereinafter diligently. Second, this outcome will ensure that the litigation of the instant suit will be resolved with reasonable dispatch. Third, the denial of plaintiff's motion to dismiss avoids further future congestion in the docket of this Court. Fourth, the denial of both motions and a return to the trial schedule guarantees that defendant will not be prejudiced, and that the Government's interests are protected. Finally, this decision assures that the parties are not permitted to circumvent the authority of this court by avoiding its orders.

Since both plaintiff's motion to dismiss under RCFC 41(a)(2) and defendant's motion to dismiss pursuant to RCFC 41(b) have been denied, this case will proceed on the schedule as noted *infra.* Obviously, the discovery deadline of December 2, 1996, has passed. Thus, the court is faced with the decision of whether to keep discovery closed, or to order that discovery be extended for a reasonable period of time. We are not unmindful that significant discovery still needs to be undertaken by both parties. Thus, in an effort to be fair, this court will hereby extend the discovery deadline for a period of 45 days from the date of filing of this opinion, *and no further.*

### CONCLUSION

In view of all of the foregoing circumstances, the court hereby DENIES both plaintiff's motion for dismissal without prejudice under RCFC 41(a)(2) and defendant's motion for dismissal with prejudice pursuant to RCFC 41(b). The following Appendix G

---

* Witnesses shall be characterized as fact, expert, or fact/expert. The anticipated length of the trial

schedule, which shall not be enlarged except for grave and extraordinary circumstances duly supported by affidavits, is hereby now operative:

1. All discovery shall be complete by October 10, 1997.

2. The parties shall comply with paragraph 10 of Section V of Appendix G by October 27, 1997.

3. Plaintiff shall comply with paragraphs 11–13* of Section V of Appendix G on or before November 10, 1997.

4. Defendant shall comply with paragraphs 11–13* of Section V of Appendix G on or before December 4, 1997.

5. The parties are not required to file proposed findings of fact (paragraphs 11(a) and 11(b)).

6. The parties shall comply with paragraphs 14–15 of Section V of Appendix G on or before December 4, 1997.

As to paragraph 14 (Stipulations), the joint memorandum shall be in two parts:

a. The first part shall contain separately numbered paragraphs covering all matters to which the parties have stipulated during the course of the proceedings. The stipulations must be comprehensive and the fact that any matter may have been established during discovery by admission or otherwise is not grounds for omitting it from stipulation. A party may not refuse to stipulate as to the content or purport of a document simply by claiming that the document is the best evidence of its content. Nor is the fact that a party deems a fact irrelevant a sufficient basis for refusing to stipulate to its existence. Relevance may be argued in the Memorandum of Contentions of Fact and Law.

b. The second part of the memorandum shall set forth any matters a party proposes to be stipulated, as to which the parties have failed to reach agreement, and which the proponent of the stipulation believes are not reasonably subject to dispute. Each such proposed stipulation shall be set forth in full,

---

and requested trial location shall also be stated.

together with the reasons the proponent believes the matter is not subject to dispute. The opposing party must explain beneath why and to what extent it believes the matter to be in dispute.

7. If contemplated, the parties shall comply with paragraph 16 of Section V of Appendix G on or before December 4, 1997.

8. The pretrial conference shall be held at 10:00 a.m. on December 19, 1997, at the National Courts Building, 717 Madison Place, N. W., Washington, D.C. 20005. The exact courtroom location will be posted in the lobby. A trial date and location will be set at this conference.

IT IS SO ORDERED.