

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2004

# In Re: Diet Drugs

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1601

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Diet Drugs " (2004). *2004 Decisions.* Paper 1093.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1093

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1601

IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/
DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION

SCOTT RUBIN,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Dist. Court No. MDL 1203)
District Judge: Hon. Harvey Bartle III

Submitted Under Third Circuit LAR 34.1(a)
December 10, 2003

Before: AMBRO, FUENTES and CHERTOFF, Circuit Judges

(Filed: January 14, 2004)

OPINION

CHERTOFF, Circuit Judge.

    This case is a small chapter in the larger body of litigation involving two diet

1

drugs, "Pondimin" and "Redux," that American Home Products Corporation (now called "Wyeth") produced until it pulled them from the market in 1997. Rubin brought suit against Wyeth seeking damages for injuries he allegedly sustained from ingesting the diet drugs. Rubin appeals from the District Court's order denying his motion for voluntary dismissal without prejudice and granting Wyeth's motion for summary judgment. For the following reasons, we will affirm.

## I.

Because we write solely for the parties' benefit, we relate only those facts necessary to apprise them of the bases for our decision.

In September of 1999, Rubin brought suit against Wyeth in Florida state court, alleging that his ingestion of Pondimin and Redux caused him to suffer neurological and heart damage. Wyeth removed the case to federal district court, and in November of 2000 the Judicial Panel on Multidistrict Ligitation transferred the case to the Eastern District of Pennsylvania District Court ("MDL Court") handling all federal diet drug cases against Wyeth.

The MDL Court's Pre-Trial Order Number 1467 ("PTO 1467"), which it had entered on October 18, 2000, required Rubin to designate case-specific witnesses and provide expert disclosures by April 1, 2001. Rubin identified his expert witnesses on September 5, 2001, more than five months past the deadline. But although he identified

his expert witnesses, Rubin failed to provide the expert reports required by PTO 1467 and Federal Rule of Civil Procedure 26(a)(2)(B). Wyeth therefore sought dismissal of Rubin's case, and the MDL Court scheduled a show cause hearing for September 24, 2001.

Prior to the hearing, Rubin provided Wyeth with the expert report of his sole causation expert, Dr. Dennis Bowsher. The report stated Dr. Bowsher's opinion that the diet drugs caused Rubin's injuries. Wyeth and Rubin then entered into an agreement whereby Wyeth agreed not to seek dismissal of Rubin's complaint and Rubin agreed to (1) use only Dr. Bowsher as a causation expert, and (2) limit his claims to those set forth in Dr. Bowsher's expert report. Despite the agreement (and without seeking leave from the MDL Court), Rubin filed an additional expert witness disclosure for Dr. Harold Palevsky on October 4, 2001.

Wyeth deposed Dr. Bowsher on December 20, 2001. At the deposition, Dr. Bowsher denied that he had been asked to serve as an expert witness in the case. When confronted with his expert report, Dr. Bowsher indicated that the statement regarding causation was "simply not correct" and that he "should not have signed here." Wyeth thereafter moved for summary judgment, arguing that Rubin could not establish that the diet drugs caused him injury.

Two weeks after Wyeth moved for summary judgment and more than two months after Dr. Bowsher's deposition, Rubin filed a motion to designate Dr. Palevsky as an

additional causation expert. Rubin invoked Federal Rule of Civil Procedure 56(f). Wyeth opposed Rubin's motion, and the MDL Court referred Rubin's request to a Special Discovery Master.

The Special Master issued a "Decision and Recommendation" recommending that the MDL Court deny Rubin's motion to designate an additional expert. Despite having the opportunity to appeal the Special Master's decision, Rubin failed to do so. As a result, the MDL Court affirmed the Special Master on October 16, 2002 and ordered that Rubin's expert disclosure of Dr. Palevsky be stricken from the record.

On November 12, 2002, Rubin filed a motion for voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). The MDL Court denied Rubin's motion to dismiss without prejudice and granted Wyeth's motion for summary judgment. Rubin timely appealed.

## II.

Once an answer or motion for summary judgment is filed in a case, a party who seeks dismissal of the case without prejudice must obtain an order from the district court. See Fed. R.Civ P. 41(a)(2). The decision whether to grant a motion for voluntary dismissal under Rule 41 is within the district court's sound discretion. See Ferguson v. Eakle, 492 F.2d 26, 28 (3d Cir. 1974). As a general matter, a district court considering a plaintiff's motion for voluntarily dismissal must "decide the presence or extent of any

4

prejudice to the defendant by the draconian measure of dismissing plaintiff's complaint." Id. at 29.

Here, the MDL Court considered several factors that counseled denying Rubin's motion. The Court noted that the case had been pending for over two years, for example, and that Rubin sought dismissal eleven months after Wyeth filed a motion for summary judgment. The Court also found that Rubin demonstrated a "complete lack of diligence" by failing to follow the Court's prescribed deadlines. Also important, the Court found that Wyeth would suffer prejudice because it had agreed not to press for dismissal in exchange for Rubin's promise that he would rely solely on the expert testimony of Dr. Bowsher. The MDL Court's decision to deny Rubin's motion for voluntary dismissal without prejudice was not an abuse of discretion.

## III.

Rubin does not dispute the District Court's conclusion that under Florida law he must present expert testimony regarding causation in order to sustain his suit and defeat Wyeth's motion for summary judgment. See Crest Prods. v. Louise, 593 So. 2d 1075, 1077 (Fla. Dist. Ct. App. 1992). And Dr. Bowsher's repudiation of his expert report at the deposition renders Rubin's claim against Wyeth deficient in that respect. Rubin seeks to avoid summary judgment, however, by arguing that the MDL Court erred by declining to delay judgment pursuant to Federal Rule of Civil Procedure 56(f) and allow him to

5

designate Dr. Palevsky as an expert witness. We review the MDL Court's refusal to withhold ruling on Wyeth's summary judgment motion for abuse of discretion. See Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 458 (3d Cir. 2003).

In Koplove v. Ford Motor Co., we found that a party asserting that it could not designate an expert witness within the time prescribed by the district court "has an obligation to provide the court with a record which affirmatively demonstrates, with specificity, diligent efforts on his or her part and unusual circumstances which have frustrated those efforts." 795 F.2d 15, 18 (3d Cir. 1986); see also Lunderstadt v. Colafella, 885 F.2d 66, 71 (3d Cir. 1989); Turner v. Schering-Plough Corp., 901 F.2d 335, 341 n.4 (3d Cir. 1990). Here, the record is replete with indicia of Rubin's lack of diligence. He failed, for example, to designate his expert witnesses until five months after the April 1, 2001 deadline, and he sought leave to designate an additional expert witness almost three months after Dr. Bowsher's deposition. Moreover, Rubin did not avail himself of the opportunity to appeal to the MDL Court the Special Master's Decision and Recommendation declining to allow him to designate Dr. Palevsky as an expert witness. The MDL Court did not abuse its discretion.

## IV.

For the reasons stated above, we will affirm the District Court's order denying appellant's motion for voluntary dismissal and granting appellee's motion for summary

judgment.

_____

TO THE CLERK:

Please file the foregoing opinion.

/s/ Michael Chertoff
Circuit Judge