Nichols, Judge,
delivered the opinion of the court:
This case was argued following Doggett v. United States, ante at 478. The same counsel represented both plaintiffs, but counsel for defendant was different. Plaintiff’s counsel thought the two cases were companion cases, and they do have some features in common. However, the differences require separate opinions. This case is before us on cross motions for summary judgment and there is no issue of relevant fact requiring trial. In discussing plaintiff’s contentions to the extent we do, we assume arguendo that our jurisdiction extends that far.
Plaintiff was a Lieutenant Colonel in the Army of the United States and a Major in the regular Army. His record shows gallantry in combat and many decorations. His service began with enlistment on June 29, 1943, and ended with voluntary retirement on May 31, 1973. The main issue, on which others turn, is at what rank was plaintiff entitled to serve in his final two years of active duty and in what rank should he be retired, Lieutenant Colonel or Colonel? Thus the issue, as in Doggett, is whether plaintiff has a clear-cut legal entitlement to the higher active duty and retirement pay of the office to which he claims he should have been promoted.
On November 6, 1970, plaintiff was detained by security personnel at the Base Exchange, MacDill Air Force Base, Florida, on suspicion of shoplifting a radio valued at $35.50. On November 11, 1970, he was notified that he had been selected for attendance at the National War College and on November 17, 1970, a Department of the Army Selection Board recommended him for promotion to Lieutenant Colonel, Regular Army. On November 19, 1970, he was ordered to Fort Stewart, Georgia, for disciplinary processing. Government counsel puts an exclamation mark at this point in his recital of the above facts. He should learn not to be astounded so easily. Such juxtapositions of events occur in Government all the time and any of us with extended Government experience could cap the story.
*487 Tbe shoplifting incident eventually halted the favorable developments in plaintiff’s career, and unfavorable ones multiplied.
The incident, after investigation, led to a proposal that plaintiff be eliminated from the Army. He refused to accept non-judicial punishment and insisted on his right to a court-martial. His counsel made it known, however, that plaintiff would enter a defense of temporary derangement based upon psychiatric reports of three civilian psychiatrists. Plaintiff was ordered to appear before a “sanity board” of four Army psychiatrists. They found that plaintiff could distinguish right from wrong, but could not control his impulses at the time of the offense, and in a neurotic sense, was not so free of mental defect, disease, or derangement, as to be able, concerning the particular act charged, to adhere to the right. They referred to pressures and conflicts from which plaintiff was suffering, which made the action comparable to a compulsive act, the motives of which were unknown to plaintiff and were therefore unconscious.
The nature of these pressures and conflicts is not stated in the record, nor is there any suggestion they were due to causes that would not be repeated, such as e.g.. shell shock from plaintiff’s then recent Vietnam experience. However, later medical reports indicated a hopeful prognosis if plaintiff submitted to treatment.
In view of the posture of the psychiatric evidence the convening authority dismissed all charges against the plaintiff.
The Strike Command General wrote the Army Chief of Staff urging that plaintiff’s usefulness was greatly diminished and that the Army could ill afford to have senior officers in important positions who could not adhere to the right. He recommended removal of plaintiff’s name from the promotion list and that he be not further considered for Senior Service Schooling, i.e., apparently, the War College.
The Deputy Chief of Staff referred plaintiff’s case to the Department of the Army Suitability Evaluation Board (DASEB) for advice as to whether future decision makers should consider the incident in future personnel actions. This Board, after reviewing the files, got off what may best be called a blast against the plaintiff, reciting the alleged facts *488 of the shoplifting incident as shown by the investigation, expressing profound skepticism as to the explanation of it by psychiatrists, and indicating that in any event there was no guarantee the incident would not occur again. The Board concluded that the adverse suitability information would appear to cast doubt upon plaintiff’s suitability. Apparently, future personnel decision makers therefore should consider the incident.
Plaintiff had a right to respond to this report before it went before future decision makers, and his response, dated June 12,1972 is in the record. In general he denied the right of DASEB to have or to consider either the investigation report or the psychiatric evaluations. He did not deny or offer to disprove any of the factual material the DASEB considered, simply stating generally that the summary of facts from the Art. 32 investigation was inaccurate and biased. In general, plaintiff’s position then was and apparently still l? that DASEB could put derogatory information before future personnel decision makers not only after notice and an opportunity to reply, which he had, but also only after an adversary due process type hearing.
The Board on receipt of this reaffirmed its right to consider the derogatory material subject to plaintiff’s right to contradict it, held that plaintiff had not satisfactorily explained or refuted the information and concluded that it reflected on plaintiff’s character, integrity, trustworthiness and reliability as an officer in the United States Army. It recommended that the material be incorporated in “OMPF” (whatever that is, we suppose the file that went before Selection Boards) of the subject officer. In any event, on July 18, 1972, the Adjutant General advised that this would occur.
Plaintiff applied to the Army Board For Correction of Military Records (BCMR), under date of October 24, 1972. He demanded removal from his record of all documents relating to the shoplifting incident, but that Board denied him a hearing, held he had failed to show error or injustice, and reaffirmed its position on his subsequent request for reconsideration. He did not request a constructive or retroactive promotion or the vacating of any Selection Board action, in his official application to the Board. His counsel’s *489 brief does demand promotion to Colonel “as of the date of eligibility.” Endorsements on the application for voluntary retirement of January 15, 1973, which actually preceded the final BOMB, refusal to reconsider, show plaintiff was not then scheduled for mandatory retirement.
This case is not like Boyd v. United States, ante at 1, and cases there discussed, wherein the pass over of an officer by a Selection Board cut short an active duty career, giving us an issue to consider, whether the material before the Board, and considered 'by it, was fair and just to the officer, or maligned him improperly. Here plaintiff remained on active duty until his wholly voluntary retirement. Counsel for plaintiff says a Board selected plaintiff for Colonel (presumably AUS) on September 4,1970, and elsewhere it is said plaintiff’s name appeared on a “recommended list” for temporary promotion to Colonel on October 23, 1970. Also, at some time after the Adjutant General’s letter, i.e., some time after July 18, 1972, plaintiff’s name was sent to a Selection Board and on recommendation of the Board, plaintiff’s name was removed from the promotion list, his counsel says. He offers no substantiation of these statements by affidavit or document and none can be found in the apparently complete administrative file. Per our Bule 101 (f), they cannot be taken as true for summary judgment purposes. Defendant, however, does not deny them, and to save a possible rehearing petition we take them arguendo as true.
Plaintiff’s name was “flagged”, from the shoplifting incident to his retirement. Under Army regulations, a “flagged” officer’s name goes before Selection Boards just like others, but the Board is not informed of the “flag”. Borys v. United States, 201 Ct. Cl. 597, cert. denied, 414 U.S. 1001 (1973). No doubt plaintiff when he retired anticipated that the DASEB evaluation in his file would assure his being passed over whenever his name did go before a Selection Board, if it had not already, and if by some miracle it did not pass him over, the “flag” would still prevent his being actually promoted. The record seems to show, however, that plaintiff could have remained on active duty for a period not shown by the record in his present grade, and *490 if he displayed sufficient improvement under psychiatric treatment, so far as appears he might have then had the barriers removed and had the promotion his previous record had so thoroughly earned him. There certainly was no indecent rush to get him out.
Plaintiff has not shown, even if his counsel’s statements are evidence, that his expectations of promotion ever left the discretionary zone and became a legally protected right, as stated and defined in Doggett. As discussed more fully below, plaintiff failed to advise the BCMR properly in his petition to it, that he desired a retroactive promotion. We presume, in the absence of other explanation, that the Board selection of September 4, 1970, could not be acted on at once because the “date of eligibility” had not arrived. Plaintiff seems to think that date arrived on or about June 1,1971. What legal effect a selection so far ahead of possible effectuation could have had we are not told and do not know. In view of the shoplifting incident, higher authority was warranted in “flagging” the promotion and plaintiff does not argue otherwise. He would have us hold that the “flagging” should have ended when the convening authority dismissed the criminal charges, October 28, 1971. However, a continued “flagging” was warranted in light of the proceedings that then ensued, to determine plaintiff’s suitability for promotion under AR 640-98 and Memorandum 600-10. Whatever complaint plaintiff has about lack of due process in these proceedings, he does not and hardly can contend they should not have taken place at all. Therefore, the “flagging” rightly continued. The September 4, 1970, selection published October 23, 1970, we believe was only advisory. Weiss v. United States, 187 Ct. Cl. 1, 408 F. 2d 416 (1969).
The second Board mentioned by plaintiff’s counsel perhaps was an “Army Standby Advisory Board” which he mentions in his BCMR petition of October 24, 1972, as one he doesn’t want the derogatory information to go to. The timing of this Board’s action is not given, but plaintiff was to submit a reply to it on December 12, 1972. Whatever this Board may have done is not shown to have had any effect on plaintiff’s legal rights. If he was not promoted before he applied for retirement on January 15, 1973, neither had he become subject *491 to mandatory retirement, as is ultimately the fate of passed over officers. There is nothing to show that whatever this Board did respecting plaintiff’s promotion was not in exercise of a discretionary function and nothing to show that plaintiff by retiring did not forestall whatever might eventually have been done to implement whatever this Board may have recommended or may have been going to recommend.
Thus, as in Doggett, our analysis of the history of the case eliminates plaintiff’s non-promotion as a legal “error” we could correct. As in that case, for completeness we consider the possibility remote as it may be, that plaintiff suffered an “injustice” not amounting to a legal “error”, but still so flagrant the Board abused its discretion in not effecting a correction, i.e., was arbitrary and capricious.
Obviously in this “injustice” area what a petitioner asks the BOMB to do is particularly crucial, for he is seeking relief a court, applied to directly, could not grant. The whole thrust of plaintiff’s application to the BOMB, was to clear away obstacles to future promotion. Despite the throwaway demand at the end of plaintiff’s counsel’s brief before the BOMB that plaintiff’s record be corrected “to reflect promotion to Colonel as of the date of eligibility”, there was no argument or showing iwhy plaintiff was entitled to this, and the formal application to the Board itself, did not include it, either as originally filed or as later supplemented. We think, therefore, the plaintiff failed to put the BOMB sufficiently on notice he wanted a retroactive promotion, and therefore he cannot tell us they were arbitrary and capricious in not granting him one.
As regards the refusal to correct the record for prospective personnel actions, we think plaintiff in view of his voluntary retirement has failed to show the refusal caused him any pecuniary injury. We note, moreover, that the application for voluntary retirement came on January 15, 1973, only a month and ten days after his supplemental application to the BOMB and more than three months before the BOMB ruled on it, April 20, 1973. We think thereby plaintiff effectively mooted his BOMB application and also, therefore, any issue before us that the BOMB acted arbitrarily and capriciously.
*492 This conclusion, is fatal to plaintiff’s whole case because the new statute, Pub. L. 92-415, 86 Stat. 652, amending 28 U.S.C. § 1491, does not authorize us to correct a record except as an incident to a pecuniary remedy. We could not, therefore, correct plaintiff’s record in the particulars he demands, if the correction did not entitle him to money damages. By his petition, he wants a promotion retroactive to June 1, 1971, apparently the date of first eligibility, ex-pungement from his record of the material originating with the DASEB, that he objects to, and a declaration'by us that the regulations governing the DASEB and the BCMR are constitutionally inadequate. The first, the retroactive promotion, being unavailable, the other two are outside our power. United States v. King, 395 U.S. 1 (1969). In particular, any pronouncement by us as to constitutionality would be entirely inappropriate.
Accordingly, the plaintiff’s motion for summary judgment is denied, the defendant’s motion for summary judgment is granted, and the petition is dismissed.