William P. FREEMAN, Plaintiff,

v.

UNITED STATES, Defendant.

No. 10–270C.

United States Court of Federal Claims.

April 21, 2011.

Dale F. Saran, West Greenwich, Rhode Island, for plaintiff.

Michael P. Goodman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Tony West, Assistant Attorney General, Civil Division, and Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Captain John G. Doyle, Department of the Army, U.S. Army Litigation Division, Arlington, VA.

## OPINION AND ORDER

LETTOW, Judge.

In this military pay case, plaintiff, Major William Freeman, seeks review of decisions by the National Guard Bureau and the Army Board for Correction of Military Records upholding the termination of his aviation service and entitlement to aviation career incentive pay. Major Freeman also requests that this court order that his military records be amended to reflect promotion to Major earlier than the date on which he received federal recognition of that promotion, and progressive promotions to Lieutenant Colonel and Colonel, along with back pay attendant to those promotions. Alternatively, Major Freeman requests back pay for his promotion to Major from his date of rank. The government has filed a motion to dismiss for lack of subject matter jurisdiction, for failure to state a claim, and for judgment upon the administrative record. In response to the government's motion, Major Freeman has altered his posture in this case significantly and now requests that the court allow him to voluntarily withdraw his complaint, or, alter-

natively, that the court transfer his case to the United States District Court for the District of Columbia.

## FACTS[1]

### A. *The National Guard and the Active Guard Reserve*

National Guard officers such as Major Freeman have a dual state and federal status. *See* Def.'s Mot. to Dismiss ("Def.'s Mot.") Ex. C (*Commissioned Officers: Federal Recognition and Related Personnel Actions,* National Guard Regulation 600–100 ("NGR 600–100") ¶¶ 2–1, 2–2 (Apr. 15, 1994)). The regulations of the National Guard explain the relationship between a member's state and federal status:

> The appointment of officers in the [Army National Guard] is a function of the State concerned, as distinguished from the Federal recognition of such appointment. Upon appointment in the [Army National Guard] of a State and subscribing to an oath of office, an individual has a State status under which to function. Such individuals acquire a Federal status when they are federally recognized and appointed as a Reserve of the Army.

*Id.* ¶ 2–2(a). "Officers who are federally recognized in a particular grade and branch shall be tendered an appointment in the same grade as Reserve commissioned officers of the Army with assignment to the Army National Guard of the United States (ARNGUS)...." *Id.* ¶ 2–1. A member of a state's National Guard serves in his state status, while possessing inactive federal status, until he is called to federal duty, at which time he is relieved of his state status for the period of federal service. *See Bowen v. United States,* 49 Fed.Cl. 673, 674, 676 (2001), *aff'd,* 292 F.3d 1383 (Fed.Cir.2002) (explaining the duality of the National Guard system).

The Active Guard Reserve ("AGR") consists of

---

1. The recitation of facts is drawn from the administrative record. *See Bannum, Inc. v. United States,* 404 F.3d 1346, 1357 (Fed.Cir.2005) ("The [c]ourt ... is required to make factual findings under [what is now Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC")] from the record evidence as if it were conducting a trial on the record.").

Army National Guard of the United States (ARNGUS) and U.S. Army Reserve (USAR) personnel serving on active duty (AD) and Army National Guard of the United States (ARNGUS) personnel serving on fulltime National Guard [duty] (FTNGD). These personnel are on FTNGD or AD (other than for training or AD in the Active Army) for 180 days or more for the purpose of organizing, administering, recruiting, instructing, or training the Reserve components and are paid from National Guard personnel, Army, or Reserve personnel appropriations.

Def.'s Mot. Ex. B. (*Promotion of Commissioned Officers and Warrant Officers Other Than General Officers,* Army Regulation 135–155 ("Army Reg. 135–155") at 92 (July 13, 2004)). Thus, the AGR includes a member of the ARNGUS serving on full-time National Guard duty in state status, and it also includes the same member when he or she is called to active duty in his or her federal status.

## B. *Major Freeman's Service and Promotions*

William Freeman is a Major in the AGR component of the Georgia Army National Guard. Compl. ¶ 1. As such, he is also a Major in the Reserve with appointment to the Army National Guard of the United States. *See id.* After beginning service as an enlisted man in September 1984, Major Freeman was commissioned in the Georgia National Guard effective June 13, 1986 as a second lieutenant concurrently with receipt of his commission as an officer in the Reserve. *Id.* ¶¶ 1, 7; AR–297 (Orders 123–4, State of GA, Dep't of Defense, Military Div., Office of the Adjutant General (June 25, 1986)).[2] Major Freeman was promoted to Captain effective October 20, 1994, Compl. ¶ 1, and in December of 1998, he became a member of an AGR unit. *Id.*

On April 5, 2001, a reserve-component selection board selected Major Freeman for promotion to Major. *See* AR–236 (Mem. re: "Eligibility for Promotion as Reserve Commissioned Officer Not on Active Duty," Dep't of the Army (July 26, 2001)). The selection memorandum stated that the promotion would be effective upon one of the following dates: May 25, 2000 (the date Major Freeman was eligible for promotion), the date federal recognition was extended in the higher grade of Major, or the date following the date federal recognition was terminated in his current Reserve grade. *Id.* On November 29, 2001, pursuant to 10 U.S.C. § 14311(e), Major Freeman's promotion was delayed due to his status as an AGR officer. AR–233 ("Notification of Involuntary Delay," Dep't of the Army, Georgia Army National Guard (Nov. 29, 2001)); AR–232 ("AGR Delay Approval on CPT William P. Freeman," Dep't of the Army, Georgia Army National Guard (Feb. 6, 2002)).

Effective February 15, 2005, Major Freeman was ordered to active duty as a member of the Reserve in support of Operation Iraqi Freedom. AR–194 (Orders 039–386, State of GA, Dep't of Defense, Military Div., Office of the Adjutant General (Feb. 8, 2005)). Consequently, effective February 14, 2005, Major Freeman was relieved from his AGR status with the Georgia National Guard. AR–188 (Orders 081–006, State of GA, Dep't of Defense, Military Div., Office of the Adjutant General (Mar. 22, 2005)). Major Freeman remained on active duty until he returned to AGR status on May 16, 2006. AR–173 (Orders 127–0007, Dep't of the Army (May 7, 2006)). On October 20, 2008, Major Freeman elected voluntarily to delay further his still-pending promotion to Major. AR–137 ("Delay of Promotion as a Reserve of the Army and Army National Guard Officer," Dep't of the Army, Georgia National Guard Element (Oct. 20, 2008)).[3]

---

2. In accord with RCFC 52.1(a), the government filed the administrative record with the court on November 12, 2010. A supplement to that record, consisting of additional regulations, was filed on December 10, 2010. References to the record are designated as "AR-___." The record is paginated sequentially.

3. At the time, Major Freeman stated that "[u]nder the provisions of [the Reserve Officer Personnel Management Act, 10 U.S.C. § 14312] I he[re]by elect to delay promotion to the grade of *Major* as a Reserve of the Army and Army National Guard officer until *26 March 2010.*" AR–137. Major Freeman's election also stated his

Major Freeman was finally promoted to Major in his state status as a member of the Georgia National Guard on November 21, 2008. AR–128 (Orders 326–127, Adjutant General, State of GA (Nov. 21, 2008)). The orders notifying him of that promotion specified, however, that he was not to be paid at that higher rank until federal recognition of his change in grade. *Id.* Major Freeman was extended federal recognition of his state-status elevation to Major on December 2, 2008, with an effective date of promotion of December 2, 2008. AR–126 (Mem. re: "Promotion as a Reserve Commissioned Officer of the Army," Dep'ts of the Army and the Air Force (Dec. 2, 2008). The federal memorandum specified that Major Freeman's "promotion and authorization for pay and allowances in the higher grade [of Major] are effective on [December 2, 2008]." *Id.* The memorandum also explained that Major Freeman's "[t]ime in grade for promotion to the next grade will be computed from [his] [p]romotion [e]ligibility [d]ate (which is [his][d]ate of [r]ank) of this promotion[,]" and set that date of rank as October 19, 2001. *Id.*

### C. Major Freeman's Earlier Flight History

Fourteen years after joining the Georgia National Guard, on September 17, 1998, the National Guard Bureau ("NGB") placed Major Freeman on flight status as an Army aviator entitled to aviation career incentive pay ("ACIP") effective August 29, 1998. AR–255 (Orders 260–03, Dep'ts of the Army and the Air Force (Sept. 17, 1998)).[4] In August 2000, Major Freeman successfully completed a UH–60 Blackhawk aviator qualification course. AR–246 (Service School Academic Evaluation Report (Sept. 6, 2000)); Compl. ¶ 14. In February 2001, however, Major Freeman failed an instrument check ride. AR–15 ("Supporting Narrative of CPT

William Freeman to the ABCMR" (Oct. 30, 2007)). As a result of that failure, Major Freeman's flying duties were suspended, *id.*, and he was ordered to present himself to a Flight Evaluation Board ("FEB") to determine whether his flight status should be revoked. Compl. ¶ 14.

The FEB convened on May 10, 2001, and it ultimately determined that although Major Freeman demonstrated a lack of proficiency in his flying duties, he was qualified for aviation service. AR–82 to 89 (Georgia National Guard, FEB (May 10, 2001)). The Board recommended that Major Freeman's flight status be restored to allow him ninety days within which to progress in his flight capabilities. *Id.* at 86–87. This first FEB was convened by Colonel Dennis Livingston, the Georgia State Aviation Officer. Compl. ¶ 15.

On December 18, 2001, the Georgia Adjutant General, David Poythress, determined that the first FEB had been improperly appointed in contravention of Army Regulation 600–105. AR–34 (Mem. of Adjutant General Poythress to Col. Livingston (Dec. 18, 2001)).[5] On March 16, 2002, a second FEB was convened. That FEB found that Major Freeman demonstrated a lack of proficiency in his flying duties and recommended that Major Freeman be disqualified from aviation service. AR–76 to 79 (Georgia National Guard, FEB (Mar. 16, 2002)). On October 7, 2002, the NGB approved the second FEB's recommendation, permanently disqualified Major Freeman from further aviation service, and terminated his entitlement to ACIP. AR–43 (NGB–AVS 600–105, Mem. for Adjutant General, GA, from Dep'ts of the Army and the Air Force, NGB (Oct. 7, 2002)); AR–44 (Orders 280–1, "Terminate aviation service and entitlement to aviation career incen-

---

understanding that he could be "promoted at any time during the approved period of delay." *Id.*

4. "ACIP is a type of incentive pay provided under 37 U.S.C. 301 a, which is designed to entice regular and reserve aviation officers to continue in aviation service on a career basis." *Laningham v. United States*, 5 Cl.Ct. 146, 154 (1984). Section 301a(d) of Title 37 extends entitlement to ACIP to members of reserve components of the

military, including the National Guard, who perform qualifying aviation duties.

5. The Adjutant General concluded that the first FEB was convened by a person lacking appointing authority to initiate such a proceeding. *See* AR–46 to 47 (Appeal to the Commanding General, Chief, NGB, *In re Cpt William Freeman* (Dec. 23, 2002)).

tive pay (ACIP)," Dep'ts of the Army and the Air Force, NGB (Oct. 7, 2002)).

In December 2002, Major Freeman challenged the second FEB decision by appealing to the Chief of the NGB. Compl. ¶ 21; AR–45 to 53 (Appeal to the Commanding General, Chief, NGB (Dec. 23, 2002)). That appeal was ultimately denied on November 29, 2004. AR–36 (Mem. for Chief of Staff, GA from Dep'ts of the Army and the Air Force, NGB (Nov. 29, 2004)). Major Freeman thereafter appealed to the Army Board for Correction of Military Records ("ABCMR" or "the Board") on November 1, 2007, requesting that the Board rescind the order terminating his aviation service and restore him to his aviation service and corresponding ACIP. AR–14 (Application for Correction of Military Record (Nov. 1, 2007)). The Board denied Major Freeman's application, finding that Major Freeman had "failed to show that he was unjustly terminated from aviation service and ACIP." AR–10 (Record of Proceedings, Docket Number: AR20070018461 (June 17, 2008)). During the pendency of Major Freeman's appeals, he shifted to another branch of the AGR and has continued his service as of the date of his complaint. Compl. ¶ 24.

### D. *Proceedings before this Court*

On May 3, 2010, Major Freeman filed a complaint in this court alleging that his termination from aviation service and consequent loss of ACIP was improper, and that the NGB and ABCMR's denial of his petition for correction of that decision was an abuse of discretion under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Compl. at 8. Major Freeman also alleged that the fourteen years he spent as a Captain was punishment for his various appeals, and that the Georgia National Guard and the Army wrongfully withheld back pay comprised of the increased pay for the grade of Major from October 19, 2001, his date of rank for that promotion. *Id.* at ¶ 29. Major Freeman requested that the court: (1) award him constructive aviation service and remove the termination of his flight status from his record; (2) award him back ACIP; (3) set his date of rank for Major to April 1, 2000, order his constructive promotion to Lieutenant Colonel

as of April 1, 2005, and to Colonel as of April 1, 2010; (4) grant him back pay commensurate with the constructive promotions, or, alternatively, grant Major Freeman back pay and commensurate promotions from October 19, 2001—the date of rank of his promotion to Major. *Id.* at 9–10.

In response to Major Freeman's complaint, the government filed a motion to dismiss and attached to that motion a brief appendix documenting portions of the administrative proceedings relating to Major Freeman. On October 13, 2010, the court issued an order denying without prejudice the government's motion to dismiss due to the "manifestly insufficient" documentation provided to the court in lieu of the administrative record. *Freeman v. United States,* 2010 WL 4058634 (Fed.Cl. Oct. 13, 2010). The government thereafter filed an adequate administrative record with the court on November 12, 2010. A supplement to that record consisting of additional regulations was filed on December 10, 2010.

On December 10, 2010, the government also filed a renewed motion to dismiss for lack of jurisdiction, for failure to state a claim upon which relief can be granted, and for judgment on the administrative record. Major Freeman responded to that motion by altering his position such that he now requests, "without conceding a lack of jurisdiction, . . . that the case be transferred to the federal district court for the District of Columbia," or, "[a]lternatively, if the [c]ourt is not inclined to [transfer], . . . that the action be dismissed" so that he might pursue his claims before the district court. Pl.'s Resp. at 1. In its reply, the government contends that transfer to the district court is not appropriate. Def.'s Reply at 1–2. A hearing was held on March 25, 2011, and the competing requests are accordingly ready for disposition.

### STANDARDS FOR REVIEW

#### A. *Jurisdiction*

 " 'Jurisdiction is a threshold issue and a court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits.' " *Ultra–Precision*

*Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1356 (Fed.Cir.2003) (quoting *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1241 (Fed.Cir.2002)). As the plaintiff, Major Freeman bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction over his claim. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed.Cir.2010). When a defendant or the court challenges the court's jurisdiction, " 'the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction.' " *Hall v. United States*, 91 Fed.Cl. 762, 770 (2010) (quoting *Murphy v. United States*, 69 Fed. Cl. 593, 600 (2006)). In considering a motion to dismiss for lack of jurisdiction, the court "accepts as true the undisputed allegations in the complaint, and draws all reasonable inferences in favor of the plaintiff." *De Maio v. United States*, 93 Fed.Cl. 205, 209 (2010) (citing *Hamlet v. United States*, 873 F.2d 1414, 1415–16 (Fed.Cir.1989)).

■■■ The Tucker Act grants this court jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act itself does not create a substantive cause of action; ... to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc portion). Where a plaintiff alleges that a statute provides such a right, "the statute [must] be fairly interpreted or reasonably amen[ ]able to the interpretation that it mandates a right of recovery in damages." *Adair v. United States*, 497 F.3d 1244, 1250 (Fed.Cir.2007) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003)) (internal quotations omitted).

**B. *Motion to Dismiss for Failure to State a Claim***

"A dismissal for failure to state a claim ... is a decision on the merits which focuses on whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief." *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed.Cir.1995) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint will survive a motion to dismiss for failure to state a claim if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. When considering such a motion, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed.Cir. 2009). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action," however, are not entitled to a presumption of truth. *Iqbal*, 129 S.Ct. at 1949.

**ANALYSIS**

**A. *Voluntary Dismissal***

Major Freeman requests that, "in light of a number of issues raised by the [government]," in the event the court denies his request to transfer, he be permitted to voluntarily dismiss his complaint. Pl.'s Resp. at 1; Pl.'s Mem. at 9. The government does not explicitly address Major Freeman's request for voluntary dismissal, but rather states generally that it "support[s] ... [its] previous motion to dismiss the complaint." Def.'s Reply at 2. The court interprets the government's continued support for its motion to dismiss as opposing Major Freeman's request for a voluntary dismissal.

■■■ Although Major Freeman does not invoke RCFC 41(a)(2), the court presumes

that he seeks voluntarily dismissal without prejudice pursuant to that rule. Rule 41(a)(2) allows a plaintiff to request the dismissal of his complaint after the defendant has filed an answer or a motion for summary judgment, and provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." [6] "[J]udicial approval is required 'to protect the nonmovant from unfair treatment.' " *Doe v. Urohealth Sys., Inc.,* 216 F.3d 157, 160 (1st Cir.2000) (quoting *Grover v. Eli Lilly & Co.,* 33 F.3d 716, 718 (6th Cir.1994)). In considering a request for voluntary dismissal, "the court has considerable latitude and discretion." *Deuterium, Corp. v. United States,* 21 Cl.Ct. 132, 134 (1990); *see also Kern v. TXO Prod. Corp.,* 738 F.2d 968, 971 (8th Cir.1984) ("The very concept of discretion presupposes a zone of choice within which the trial courts may go either way [in granting or denying a motion for voluntary dismissal without prejudice.]"). Cases considering requests under RCFC 41(a)(2) most often require the court to decide whether the case should be dismissed with or without prejudice, with the defendant arguing for the former disposition. *See, e.g., Whyde v. United States,* 51 Fed.Cl. 635, 636–38 (2002), *Schweiger Const. Co., Inc. v. United States,* 49 Fed.Cl. 188, 208–09 (2001), *Standard Space Platforms Corp. v. United States,* 38 Fed.Cl. 461, 465–66 (1997). In that context, the court in *Deuterium* explained that although "[n]o precise formula governs dismissals with prejudice" the following three factors ought to be considered: (1) the burden on the defendant, (2) the progress of the litigation, and (3) the plaintiff's diligence and good faith. *Deuterium,* 21 Cl.Ct. at 134; *see also Pace v. Southern Exp. Co.,* 409 F.2d 331, 334 (7th Cir.1969) (identifying four factors, *viz.,* "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a mo-

tion for summary judgment has been filed by the defendant"); *Johnson v. Wynne,* 239 F.R.D. 283, 285–86 (D.D.C.2006) (listing four factors corresponding to those identified in *Pace* ).[7]

That Major Freeman has requested a dismissal subsequent to the filing of a dispositive motion by the government is a circumstance that disfavors allowing a voluntary dismissal. *See, e.g., Pace,* 409 F.2d at 334 (that a motion for summary judgment had been filed by defendant supported denying plaintiff's motion for voluntary dismissal); *Deuterium,* 21 Cl.Ct. at 134–35 (that defendant had filed a summary judgment motion counseled against dismissal without prejudice); *cf. Fala Corp. v. United States,* 53 Fed.Cl. 90 (2002) (dismissing with prejudice plaintiff's complaint during consideration of government's summary judgment motion where government opposed dismissal with or without prejudice). The government has expended considerable resources in developing and presenting its arguments in its motion to dismiss. Additionally, Major Freeman had an opportunity at an earlier stage in this case to avail himself of voluntary dismissal. Notably, in the government's first motion to dismiss, denied by the court on procedural grounds, the government presented the identical arguments it now presents in support of its dismissal, thus putting Major Freeman on notice of the potential defects in his complaint.

Furthermore, Major Freeman has not adequately explained why it is more appropriate at this juncture in the case for the court to allow a voluntary withdrawal of his complaint rather than address the government's pending dispositive motion. Major Freeman's request that he be allowed to voluntarily dismiss his complaint is very likely an effort to litigate his claim in another forum under what he perceives would be more favorable circumstances. Included in his response is a recitation of the Federal Circuit's precedents

**6.** "Unless the order states otherwise, a dismissal under [Rule 41(a)(2)] is without prejudice." RCFC 41(a)(2).

**7.** In *Pace,* the cited factors were considered by the Seventh Circuit in its review of the propriety

of the trial court's denial of plaintiff's motion for voluntary dismissal without prejudice and the court's decision to rule on defendant's then-pending motion for summary judgment instead. *See* 409 F.2d at 333.

regarding promotions in military pay cases, precedents which Major Freeman argues make it "far from a certain matter" that he would prevail on the merits in this court. Pl.'s Mem. at 7. This factor counsels against granting Major Freeman's request for a voluntary dismissal at this juncture.

That Major Freeman now finds himself "in a position in which it is inconvenient to pursue his case is unpersuasive." *Hubbard v. United States*, 545 F.Supp.2d 1, 8 (D.D.C. 2008). In this regard, Major Freeman's "[i]nsufficient explanation of the need for dismissal" and probable "us[e of] dismissal to deprive [the] defendant of a ruling on a dispositive motion" disfavors granting Major Freeman's request. *Deuterium*, 21 Cl.Ct. at 135 (citing *Pace*, 409 F.2d at 334); *see also Standard Space*, 38 Fed.Cl. at 471 (Plaintiffs may not "simply aver vague reasons for dismissal without prejudice in an attempt to remedy the situation by obtaining a clean slate" when the "case does not follow the hospitable path that the party had anticipated.").

In light of the foregoing, the court finds that voluntarily dismissal at this juncture is inappropriate and denies plaintiff's request for such a disposition.

### B. *Motion to Dismiss*

1. *Claims regarding termination of flight status.*

■ Major Freeman seeks correction of his military records to remove the termination of his flight status from his record, award him constructive aviation service, and grant him commensurate ACIP for the intervening time. Compl. at 9. Major Freeman avers that the NGB and ABCMR "abused their discretion" in denying his claims. Compl. ¶ 28. The government contends that any claims relating to Major Freeman's termination of flight status and entitlement to ACIP are barred by this court's statute of limitations. Def.'s Mot. at 15–19. The government also avers that because Major Freeman's ACIP claim is barred by the statute of limitations, this court lacks jurisdiction to

otherwise review the decisions of the NGB and ABCMR as to this issue. *Id.* at 19–20.[8]

■ Claims over which this court might otherwise possess jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Because this statute of limitations circumscribes the scope of the government's waiver of sovereign immunity, it is "jurisdictional" in nature and must be construed strictly. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed. Cir.1988). The court may not consider whether a case warrants equitable tolling, *see John R. Sand & Gravel Co.*, 552 U.S. at 133–34, 128 S.Ct. 750, or infer exceptions to the limitations period. *See Hopland Band of Pomo Indians*, 855 F.2d at 1577.

■ A claim accrues for the purposes of Tucker Act jurisdiction "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the [g]overnment's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir.2003) (en banc) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct.Cl.1966)); *see also Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed.Cir.2009). Generally, a military pay claim accrues, and the statute of limitations period is triggered, on "the date on which the service member was denied the pay to which he claims entitlement." *Martinez*, 333 F.3d at 1314; *see also Chisolm v. United States*, 82 Fed.Cl. 185, 198 (2008), *aff'd*, 298 Fed. Appx. 957 (Fed.Cir.2008). A plaintiff's invocation of permissive administrative remedies, such as appeals to administrative tribunals and correction boards which are not required for the exercise of this court's powers of judicial review, does not generate a further cause of action with a separate limitations period nor does it toll the limitations period. *See Martinez*, 333 F.3d at 1304; *see also*

---

8. The parties do not appear to dispute that the statute providing for payment of ACIP to qualified National Guard and Reserve officers, 37 U.S.C. § 301a(d), is a money-mandating statute upon which Major Freeman may rely to bring his claim within the scope of the Tucker Act.

*Wright v. United States*, 81 Fed.Cl. 369, 373 (2008) ("[I]t is a canon of military-pay jurisprudence that seeking permissive administrative review does not toll the statute of limitations in the Tucker Act.").[9]

On October 7, 2002, the NGB approved the recommendation of the second FEB, and terminated Major Freeman's aviation service and his corresponding entitlement to ACIP. AR–43 (NGB–AVS 600–105, Mem. for Adjutant General, GA, from Dep'ts of the Army and the Air Force, NGB (Oct. 7, 2002)); AR–44 (Orders 280–1, "Terminate aviation service and entitlement to aviation career incentive pay (ACIP)," Dep'ts of the Army and the Air Force, NGB (Oct. 7, 2002)). As noted, Major Freeman appealed this decision to the NGB, which appeal was ultimately denied on November 29, 2004. AR–36 (Mem. for Chief of Staff, GA, from Dep'ts of the Army and the Air Force, NGB (Nov. 29, 2004)).

In his response to the government's first motion to dismiss, Major Freeman argued that his appeal to the NGB was a mandatory administrative remedy, the exhaustion of which was required to engender jurisdiction in this court. *See* Pl.'s Resp. to Def.'s First Mot. to Dismiss at 4–6. Based upon this premise, Major Freeman contends that the statute of limitations did not accrue on his ACIP claim until the NGB appeal was denied, thus rendering timely the filing of his complaint in this court on May 3, 2010. *Id.* at 5. In support of this position, Major Freeman cites to Army Regulation 600–105. *Id.* at 4. The government contests Major Freeman's interpretation of the pertinent regulation, arguing that the NGB's termination of Major Freeman's flight status and ACIP on October 7, 2002 represents the date on which the statute of limitations began to run. Def.'s Mot. at 17–19.

The provision of Army Regulation 600–105 which Major Freeman invokes provides that

"[o]n the basis of other additional evidence or new unexpected circumstances, a respondent *may request* the MACOM commander to reconsider the approving authority's decision. Appeals (complete with a copy of the disqualifying FEB) must be sent through the same channels as the FEB." Def.'s Mot. Ex. A (*Aviation Service of Rated Army Officers*, Army Reg. 600–105 ¶ 6–4 (Dec. 15, 1994)) (emphasis added). In this regard, there is nothing within Army Regulation 600–105 or 37 U.S.C. § 301a that suggests that an appeal to the NGB following the NGB's approval of a FEB recommendation or an appeal to the ABCMR is a required remedy. Instead, Army Regulation 600–105 states that the NGB's approval of the second FEB's recommendation constituted "final action" respecting the termination of aviation service. It provides, "When all reviewers [of the FEB] recommend disqualification, and when the FEB appointing authority believes disqualification or permanent disqualification is proper, final action will be taken by the approving authority." Army Reg. 600–105 ¶ 6–3(h). The "approving authority" for members of the Army National Guard of the United States is the Chief of the NGB. *Id.* ¶ 6–1(e). Thus, on October 7, 2002, when the NGB terminated his aviation service and ACIP, "all events ha[d] occurred that [we]re necessary to enable [Major Freeman] to bring suit." *Martinez*, 333 F.3d at 1303.

In his response to the government's second motion to dismiss, however, Major Freeman argues that even if October 7, 2002, represents the pertinent date for the statute of limitations, "[t]he statute of limitations has likely not run because it has been tolled during [Major Freeman's] military service" pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. app. § 526 ("the SCRA"). Pl.'s Mem. at 4.[10] The SCRA provides:

---

9. A separate triggering rule applies to claims regarding entitlement to disability pay. *See Chambers v. United States*, 417 F.3d 1218, 1223–25 (Fed.Cir.2005).

10. "The SCRA is the present incarnation of the Soldiers' and Sailors' Civil Relief Act of 1940 ("SSCRA") and is designed to strengthen national security by allowing servicemembers 'to devote their entire energy to the defense needs of

the Nation [and] to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.' " *Cronin v. United States*, 98 Fed.Cl. 268, 270 (2011) (quoting 50 U.S.C. app. § 502); *see also Lowe v. United States*, 79 Fed.Cl. 218, 224–25 (2007) (recounting history and purpose of the SCRA), *appeal dismissed*, 333 Fed.Appx. 523 (Fed.Cir.2009). The substance of

The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the service-member's heirs, executors, administrators, or assigns.

50 U.S.C. app. § 526(a). "Military service" for the purposes of the SCRA is defined as:

(A) in the case of a servicemember who is a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard

(i) active duty, as defined in section 101(d)(1) of title 10, United States Code, and

(ii) in the case of a member of the National Guard, includes service under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.

50 U.S.C. app. § 511(2).[11] Section 101(d)(1) of Title 10 in turn defines "active duty" as:

*[F]ull-time duty in the active military service of the United States.* Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. *Such term does not include full-time National Guard duty.*

10 U.S.C. § 101(d)(1) (emphasis added).

The parties agree that Major Freeman's service under Title 10 orders in Iraq from February 15, 2005 to May 16, 2006 qualifies as "military service" for the purposes of the SCRA and thus is excluded from the limita-tions period. *See* Pl.'s Mem. at 4; Def.'s Reply at 7. When that period is excised from the calculation, the statute of limitations expired on Major Freeman's aviation-service-related claims on January 8, 2010. Pointing to his attendance at annual training sessions and various "service schools" during the applicable time period, Major Freeman avers in his response that he "believes he can make out sufficient time during which the applicability of the statute of limitations would have been tolled." Pl.'s Mem. at 6.

Major Freeman's argument on this point is unavailing. As the government points out, "Major Freeman must do more than demonstrate that there is the 'possibility' that this [c]ourt possesses jurisdiction; he must establish facts supporting this [c]ourt's authority to provide relief.'" Def.'s Reply at 5. The burden to establish jurisdiction rests squarely upon Major Freeman, and when this court's jurisdiction is challenged, as it is here, he must come forward with "competent proof" that the court may hear his case. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Beyond a general reference to attendance at various military classes, Major Freeman makes no effort to demonstrate sufficient active service to toll the statute of limitations up to the date Major Freeman filed his complaint.

Moreover, training sessions and classes that Major Freeman may have attended do not qualify as "military service" for the purposes of the SCRA. The periods spent in those activities do not constitute active federal service under 32 U.S.C. § 502(f); therefore, to constitute "military service" under the SCRA they must qualify as "active duty" under 10 U.S.C. § 101(d)(1). Although "active duty" includes periods of "full-time training duty, annual training duty, and attendance, while in the active military service, at a school," "full-time National Guard duty" is explicitly excluded from the

---

the SSCRA was unchanged by the 2003 amendments, which converted the SSCRA to the SCRA. *Lowe*, 79 Fed.Cl. at 225 n. 8.

**11.** "Military service" also encompasses active service by officers of the Public Health Service or the National Oceanic and Atmospheric Administration and any periods during which a service-member is absent from duty from sickness, wounds, leave, or other lawful cause. 50 U.S.C. app. § 511(2)(B)–(C).

definition of "active duty." 10 U.S.C. § 101(d)(1).[12] For the periods Major Freeman was not serving in his federal capacity on active duty in the Reserve, he was serving in his state capacity on "full-time National Guard duty." *See, e.g.*, AR–234 (Orders 240–021, State of GA, Dep't of Defense, Military Div., Office of the Adjutant General (Aug. 28, 2001)) ("You are extended on *full-time National Guard Duty (FTNGD)* with your consent and the consent of the Governor of Georgia in an Active Guard/Reserve (AGR) status . . . [indefinitely from December 1, 2001 onwards].") (emphasis added). Thus, the time Major Freeman spent attending training sessions while serving in his state status does not constitute "military service" within the meaning of the SCRA. *Accord Bowen*, 292 F.3d at 1386–87 (Two-week training of Air National Guard officer was not "active duty" and thus could not constitute "military service" under the predecessor statute of the SCRA, the SSCRA).[13]

■ In sum, Major Freeman has not demonstrated that the statute of limitations was tolled up to and including May 3, 2004—six years before the date he filed his complaint. As a consequence, the portion of Major Freeman's complaint relating to the termination of his aviation service and his entitlement to ACIP must be dismissed for lack of jurisdiction. This dismissal includes as well Major Freeman's request that the court review the decisions of the NGB and the ABCMR. Because this court lacks juris-

diction under the APA, *Martinez*, 333 F.3d at 1313, it may only review the decisions of correction boards when "the underlying basis for the suit is the denial of . . . pay." *Id.* at 1314. The dismissal of the jurisdictional predicate which would otherwise allow this court to exercise incidental review over the decisions of the administrative boards thus takes with it Major Freeman's request that the court review the decisions of the NGB and ABCMR for error on this ground. *See id.* at 1313–14; *James v. Caldera*, 159 F.3d 573, 580–81 (Fed.Cir.1998); *Michienzi v. United States*, 207 Ct.Cl. 484, 491–92 (1975); *Reilly v. United States*, 93 Fed.Cl. 643, 650 (2010).

2. *Request for backdated promotions.*

■ Major Freeman avers that the Georgia National Guard and United States Army harmed him "by keeping [him] at his same rank as a Captain for 14 years as a punishment for his appeal and complaints against the command." Compl. ¶ 29. Major Freeman requests as relief for this alleged injury that the court order alteration of his records to reflect that Major Freeman was promoted to Major on April 2, 2001, to Lieutenant Colonel on April 1, 2005, and to Colonel on April 1, 2010, and grant him back pay commensurate with those positions. *Id.* at 9.

■ To the extent Major Freeman's allegations are rooted in the theory that he was

---

12. Notably, section 101(d)(5) of Title 10 defines "full-time National Guard duty" as "training or other duty, other than inactive duty, performed by a member of the Army National Guard of the United States or the Air National Guard of the United States in the member's status as a member of the National Guard of a State." 10 U.S.C. § 101(d)(5).

13. Pursuant to 32 U.S.C. 502(f), Major Freeman was ordered to indefinite active full-time National Guard duty for periods beginning on December 1, 2001 and May 16, 2006. *See* AR–178 to 179 (Orders 111–283, State of GA, Dep't of Defense, Military Div., Office of the Adjutant General (Apr. 21, 2006)); AR–234 to 235 (Orders 240–021, State of GA, Dep't of Defense, Military Div., Office of the Adjutant General (Aug. 28, 2001)). "Military service" for the purposes of the SCRA includes, however, service in a member's *federal* capacity under 32 U.S.C. § 502(f); such service must be "authorized by the President or the

Secretary of Defense . . . for purposes of responding to a national emergency declared by the President and supported by Federal funds." 50 U.S.C. app. § 511(2)(A)(ii). Major Freeman's periods of full-time National Guard duty under 32 U.S.C. 502(f), however, was in his *state* capacity, and as such, was authorized by the Governor of Georgia, not the President or the Secretary of Defense. *See, e.g.*, AR–179 ("By order of the Governor"); *id.* at 178 (stating to Major Freeman that "[i]n the event your ARNG unit of assignment is called or ordered to *Federal active duty*, you will be terminated automatically from your *32 U.S.C. § 502(f) AGR status the day before the effective date of federalization*") (emphasis added). Thus, those periods of service do not qualify as "military service" under 50 U.S.C. app. § 511(2). *See Bowen*, 292 F.3d at 1386–87 (explaining that where service is ordered and directed by a state, it is not qualifying federal service under SCRA's predecessor statute).

not promoted due to retaliation by the government, this court lacks jurisdiction over such claims. *See Smart v. United States,* 85 Fed.Cl. 609, 612 (2009). Additionally, while this court may review military service decisions for procedural error, *see Fisher,* 402 F.3d at 1177, Major Freeman does not point to any law or regulation that has been allegedly violated by his delayed promotion to Major and his consequent absence of promotion to Lieutenant Colonel and Colonel.

■ In this context, "[a] claim of error in a promotion decision presents a nonjusticiable controversy because there are no statutory or regulatory standards against which a court can review such a decision; it relates to a matter left to the discretion of the military." *Fluellen v. United States,* 225 F.3d 1298, 1304 (Fed.Cir.2000); *see also Sargisson v. United States,* 913 F.2d 918, 921–22 (Fed. Cir.1990). Thus, Major Freeman's request that this court order his promotion "plainly [i]s a request for impermissible 'interfere[nce] with legitimate Army matters.'" *Adkins v. United States,* 68 F.3d 1317, 1324 (Fed.Cir.1995) (quoting *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953)) (so labeling plaintiff's request that the court direct the Secretary to promote him to the rank of Colonel); *Voge v. United States,* 844 F.2d 776, 782 (Fed.Cir.1988) ("[A]bsent a statute or regulation entitling a service member to a promotion as a matter of law, the Claims Court has no authority to entertain [claims requesting military promotions].").[14]

■ Major Freeman's attendant request that the court award him back pay commensurate to his requested promotions also must fail. Generally, "a service member is entitled only to the salary of the rank to which he is appointed and in which he serves." *Reilly,* 93 Fed.Cl. at 649 (quoting *Smith v. Secretary of the Army,* 384 F.3d 1288, 1294 (Fed.Cir. 2004)). Thus, "'in a challenge to a decision not to promote, the Military Pay Act ordinarily does not give rise to a right to the pay of the higher rank for which the plaintiff was not selected.'" *Reilly,* 93 Fed.Cl. at 649 (quoting *Smith,* 384 F.3d at 1294). An ex-

ception arises in cases where "there is a clearcut legal entitlement" to the requested promotion, *Skinner v. United States,* 594 F.2d 824, 830 (Ct.Cl.1979), but Major Freeman has not alleged a factual basis for invoking that narrow exemption.

Accordingly, the portion of Major Freeman's complaint that seeks court-mandated promotions and attendant back pay is dismissed.

3. *Back pay for promotion to Major.*

■ Major Freeman alternatively asserts that he is entitled to, and has not received, back pay for his promotion to Major with date of rank from October 19, 2001. Compl. at 9–10. Major Freeman avers that the denial of that pay by the Georgia National Guard and the Army constitutes a violation of statute. *Id.* at 9. The government argues that Major Freeman fails to state a claim upon which relief can be granted in this respect because an officer's date of rank does not determine an officer's entitlement to the pay and allowances of a position; rather, the effective date of the promotion controls such entitlement. Def.'s Mot. at 8–12.

■ Section 204(a) of Title 37 governs pay for members of the military on active duty and those on full-time National Guard duty, and is a money-mandating statute. *See Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999). As a member of the AGR, Major Freeman may rely upon this statute as a source of jurisdiction in this court.

The duality of the National Guard system shapes the promotion process. A state may initiate an officer's promotion in his capacity as a member of the Army National Guard. *See* NGR 600–100 ¶ 8–1 ("The promotion of officers in the [Army National Guard] is a function of the State."). An officer promoted in his state status must receive federal recognition of that elevation, and that recognition will in turn promote that officer in his status as a member of the Army Reserve. *Id.* ¶¶ 8–2, 8–3.

---

14. The portion of Major Freeman's complaint that alleges that he suffered undue prejudice by not having sufficient time in grade as a Major to be considered favorably for promotion to Lieutenant Colonel, *see* Compl. at ¶ 30, is likewise dismissed.

As in Major Freeman's case, promotion may also be initiated in an officer's federal status by virtue of his appointment to the Reserve of the Army. *See* NGR 600–100 ¶ 8–14 ("[Army National Guard] commissioned officers will be mandatorily considered for promotion as Reserve commissioned officers of the Army when they meet minimum promotion service requirements prescribed for the zone of consideration."); *see also* 10 U.S.C. §§ 14101, 14301. In these circumstances, federal recognition of that elevation is still required to effectuate the promotion. NGR 600–100 ¶ 8–15. Federal recognition is dependent on various conditions, one of which is "promot[ion] in State status to fill an appropriate position vacancy in the higher grade." *Id.* ¶ 8–15(a)(5); *see also* 10 U.S.C. § 14316(a). If no vacancy is available at the promoted level in the state's National Guard, and the officer is not then serving on active duty, the officer may either abdicate his AGR status and transfer to the Reserve to receive the promotion or delay the promotion for up to three years and remain in his AGR status. *See* 10 U.S.C. § 14312(a); NGR 600–100 ¶ 8–16(a); Army Reg. 135–155 ¶¶ 4–21(d). During this delay, the officer may be promoted to fill a vacancy at any time prior to the expiration of the delay period. NGR 600–100 ¶ 8–16(c). Additionally, the promotion of a reserve officer who is serving on active duty or fulltime National Guard duty may be involuntarily delayed to ensure compliance with the strength limitations delineated in 10 U.S.C. § 12011,[15] or until it is determined that "the duty assignment of the officer requires a higher grade than the grade currently held by the officer." 10 U.S.C. § 14311(e)(2).[16]

An officer is promoted following selection after "all qualifications for promotion are met." Army Reg. 135–155 ¶ 4–21. Accordingly, an AGR officer who is selected for promotion by a mandatory board but who is not then attached to a position in the higher grade "will be promoted on the date of assignment/attachment to a higher graded position or the day after release from AGR status." Army Reg. 135–155 ¶ 4–21(d). In these circumstances, "[t]he date of rank will be the date the officer attained maximum [time in grade] or the date on which assigned/attached to a position in the higher grade, whichever is earlier." *Id.* NGR 600–100 provides that "[p]ay administration for all personnel will be as outlined in NGR (AR) 37–104–3 and in NG Pam[phlet] (AR) 37–104–3 and NGB Pam[phlet] 37–104–10." NGR 600–100 ¶ 5–3(a).[17] NGR 37–104–3 dictates that "An [Army National Guard] officer promoted to a higher grade will not be paid in that grade until receipt of permanent Federal recognition." NGR 37–104–3, *Military Pay and Allowances Policy and Procedures—Army National Guard*, ¶ 2–2(e) (Oct. 24, 2003), *available at* http://www.ngbpdc.ngb.army.mil/pubs/37/ngr37_104_3.pdf.[18]

Under NGR 600–100 and Army Regulation 135–155, Major Freeman's promotion could not proceed until he was elevated in his state status to the higher grade of Major and he received federal recognition of that elevation concurrent with an appointment in his federal Reserve status to the grade of Major.

---

**15.** Strength limitations put a cap on the number of members who are serving on full-time reserve-component duty in each of the grades of major, lieutenant colonel, and colonel. 10 U.S.C. § 12011.

**16.** Separate provisions of NGR 600–100 and Army Regulation 135–155 govern promotion of AGR officers who are serving on active duty in their federal status. *See* NGR 600–100 ¶ 8–17(a); Army Reg. 135–155 ¶ 4–15(c). In those circumstances, when an officer is not assigned to a position at the higher grade of promotion in his state status, the officer's promotion is automatically delayed. NGR 600–100 ¶ 8–17(a); Army Reg. 135–155 ¶ 4–15(c). That delay in federal recognition continues until the officer is removed from the promotion list, promoted to the higher grade in his state status or reassigned to an AGR position that requires such promotion, or promoted following release from the AGR program or active duty. NGR 600–100 ¶ 8–17(a); Army Reg. 135–155 ¶ 4–15(c).

**17.** Army Regulation 135–155 states that "[p]ay, seniority, and placement on the [Reserve Active Status List] will be determined by the effective date of promotion cited in the promotion memorandum and the officer's date of rank, and not by the promotion ceremony." ¶ 5–3(c).

**18.** In accord with the requirement that an officer may not be promoted until all requirements are met, "the effective date of promotion may not precede the date of the promotion memorandum." Army Reg. 135–155 ¶ 4–21.

NGR 600–100 ¶ 8–15(a)(5); *see* 10 U.S.C. § 14316(a). Major Freeman's promotion was delayed, once involuntarily pursuant to 10 U.S.C. § 14311(e) and once voluntarily pursuant to 10 U.S.C. § 14312(a) and the governing regulations, NGR 600–100 ¶ 8–16(a) and Army Regulation 135–155 ¶¶ 4–21(d). *See* AR–233 ("Notification of Involuntary Delay," Dep't of the Army, Georgia Army National Guard (Nov. 29, 2001)); AR–137 ("Delay of Promotion as a Reserve of the Army and Army National Guard Officer," Dep't of the Army, Georgia National Guard Element (Oct. 20, 2008)).

In accord with Army Regulation 135–155, because Major Freeman's promotion was delayed, his date of rank was the date on which he obtained his maximum time in the grade of Captain (that date being earlier than the date he was appointed to the grade of Major)—October 19, 2001. Army Reg. ¶ 4–21(d); *see also* Pl.'s Mem. at 2 (noting that Major Freeman's "date of rank was ... set back to October 19, 2001, exactly 1 day before [the] 7 years maximum time in grade"). Also as provided in Army Regulation 135–155, Major Freeman's effective date of promotion was set at the date of federal recognition of his state elevation and his concurrent appointment to Major in his Reserve status—December 2, 2008. Army Reg. 135–155 ¶ 4–21. Under National Guard Regulation 37–104–3, that effective date of promotion constitutes the day on which he first became entitled to pay in the grade of Major. *See* NGR 37–104–3 ¶ 2–2(e); *see also Poole v. United States*, 88 Fed.Cl. 748, 751 (2008) (under prior version of Army Regulation 135–155, officer was not entitled to pay at higher grade until effective date of promotion).

While Major Freeman's backdated date of rank determines his seniority relative to other officers,[19] his entitlement to compensation at the status of Major commenced on December 2, 2008. Consequently, Major Freeman lacks a legally cognizable claim for entitlement to pay as a Major prior to December 2, 2008.[20]

### C. Transfer

■ Major Freeman requests that, if this court finds against him, it transfer his case to the United States District Court for the District of Columbia. Pl.'s Mem. at 3. Major Freeman argues that his request for judicial review of the decision of the ABCMR would be timely in the district court and that his monetary claims would be properly within its jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346, "given the *possible* threshold amount of less than $10,000." Pl.'s Mem. at 3 (emphasis added). The government opposes such a transfer, arguing that Major Freeman seeks monetary relief from the government, which this court has jurisdiction to provide, and that Major Freeman in reality seeks to contest in that court the substance of the military's decision to revoke his flight status. Def.'s Reply at 12–13.

■ Section 1631 of Title 28 governs the transfer of cases from this court and provides:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed. . . .

Thus, for a case to be transferred, three elements must be present: "(1) the transferring court must lack subject matter jurisdic-

19. Army Regulation 135–155 defines an officer's "date of rank" as "the date the officer actually or constructively was appointed or promoted to a specific grade. It is the date used to determine the relative seniority for officers holding the same grade." ¶ 4–17(b).

20. Major Freeman alternatively alleges that even if his date of rank for his promotion does not determine his entitlement to pay, he began work in a Major's billet in June 2008, thus entitling him to pay commensurate with that rank begin-

ning in June 2008, at the latest. Pl.'s Mem. at 1–3. In support of this proposition, Major Freeman points to his officer evaluation report for the period covering June 1, 2008 to October 31, 2008, which he alleges demonstrates his assignment to a Major's billet during that time. AR–134 to 135 (Officer Evaluation Report). That report, however, lists Major Freeman's rank as "CPTP" and consistently refers to Major Freeman as "CPT [Captain] Freeman" throughout the commentary. *Id.*

tion; (2) at the time the case was filed, the case *must have been able to have been brought in the transferee court;* and (3) such a transfer must be in the interest of justice." *Naskar v. United States,* 82 Fed.Cl. 319, 321 (2008).

█ The portion of Major Freeman's complaint relating to the termination of his aviation service and attendant claim for back ACIP has been dismissed for lack of subject matter jurisdiction, while the portion of his complaint relating to his request for backpay pursuant to his promotion to Major and attendant claims that this court promote him have been dismissed for nonjusticiability and failure to state a claim upon which relief can granted. In cases resulting in a "bifurcated resolution such as this ... the [former claims] may be transferred." *Reilly,* 93 Fed. Cl. at 651; *see United States v. County of Cook, Ill.,* 170 F.3d 1084, 1088–89 (Fed.Cir. 1999). Major Freeman has not demonstrated, however, that at the time his suit was filed, the portion of his complaint relating to his aviation service and back ACIP would have been jurisdictionally proper in the district court and not in this court.

Transfer to a district court of Major Freeman's claims over which this court does not have subject matter jurisdiction because of the statute of limitations would be improper because this court could have provided an adequate remedy inclusive of both Major Freeman's monetary and attendant nonmonetary claims regarding his aviation service had his complaint been timely filed. *See Martinez,* 333 F.3d at 1320. Section 10(c) of the Administrative Procedure Act provides for judicial review in the district courts of "final agency action *for which there is no other adequate remedy in a court.*" 5 U.S.C. § 704 (emphasis added); *see also Smith,* 384 F.3d at 1291–93 (explaining the operation of Section 1631 in a similar context and noting that "the Court of Federal Claims can offer a service member ... an adequate remedy for a claim relating to military status (and thus deprive the district court of jurisdiction over the claim) if the service member's claim constitutes a request for money (together with a request for ancillary equitable relief) and if the request is based on a money-mandating

statute, such as the Military Pay Act"). As the Federal Circuit stated when facing this precise issue in *Martinez:* "The fact that the complaint was untimely filed in the Court of Federal Claims does not mean that court could not offer a full and adequate remedy; it merely means that [the plaintiff] did not file his complaint in time to take advantage of that remedy." *Martinez,* 333 F.3d at 1320; *see also Fulbright v. United States,* 97 Fed.Cl. 221, 231 (2011) ("[A] case should not be transferred where the Court of Federal Claims could have offered a 'full and adequate remedy' had the case been timely filed."). Accordingly, Major Freeman's complaint could not have been brought in a district court in the first instance, and the court therefore lacks authority under Section 1631 to transfer it to the United States District Court for the District of Columbia.

## CONCLUSION

Major Freeman's record indicates that he has served commendably and with success throughout his extensive military career and particularly during his service in Iraq. Nothing the court has written in ruling upon his current claims should detract from that fact. Nevertheless, for the reasons stated, defendant's motion to dismiss is GRANTED. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so ORDERED.